# Carlos J. Rivera Ruiz, et al., appellants, v. Municipio Autonomo de Ponce, et al., petitioners

Puerto Rico Supreme Court
September 14, 2016
AC-2014-4

## Reporter
196 D.P.R. 410 *; 2016 PR Sup. LEXIS 199 **; 2016 TSPR 197

Carlos J. Rivera Ruiz, et al., appellants v. Municipio Autonomo de Ponce, et al., petitioners

**Previous History: [**1]** Subject: Extracontractual Civil Liability - The prescriptive term to request compensation in the case of damages caused by any culpable act or negligent omission of a continuing nature, begins to run when the last acts or omissions are verified or when the final result occurs, whichever is later.

## Case Summary

### Description
HOLDINGS: [1] -The action for damages filed by the residents against the municipality, for damages caused by the floods produced as a consequence of the defects of the sewers in the street where they live, was not time-barred because the last acts or omissions had not been verified nor had the final result been produced and it was foreseeable that the damages would continue as long as the lack of maintenance of the sewers and pipes persisted; [2] -The prescriptive term to initiate an action for damages caused by any culpable or negligent act or omission of a continuing nature begins to run when the last acts or omissions are verified or the final result occurs, whichever is later.

### Result
The determination of the Court of Appeals was affirmed. The case was returned to the Court of First Instance for the continuation of the procedures.

### Main Terms
cases, continued, cause, this, moment, when, Torts > ... > Statute of Limitations > Begins to Run > Continuing Violations

### *HN1* **Begins to Run, Continuing Violations**

The continuous damages are those produced by one or more culpable or negligent act or omission attributable to the actor, whether contemporaries or not, resulting in uninterrupted injurious consequences, sustained, lasting without interruption, joined together, which when known also make knowable – for being foreseeable – the continuous and uninterrupted nature of its effects, becoming at that time a certain damage composed of elements of current damage and foreseeable future damage and therefore certain.

Torts > Procedural Matters > Statute of Limitations > Begins to Run

*HN2* **Statute of Limitations, Begins to Run**

The difference between the successive damages and the continued damages is that in the successive, each injury caused by a culpable or negligent act or omission produces a different damage, which in turn generates an independent a cause action, while in the continued, a single cause of action is generated that comprises all the actual damages, both the current ones and the ones foreseeable in the future, as result of a continuous tortuous behavior. This difference implies that in these two scenarios the prescriptive term to submit a claim for compensation begins to run at different times.

Torts > ... > Statute of Limitations > Begins to Run > Continuing Violations

*HN3* **Begins to Run, Continuing Violations**

In the face of damages caused by any culpable or negligent act or omission of a continuing nature, the prescriptive term to initiate an action to request compensation begins to run when the latest acts or omissions are verified or the final result is produced, whichever occurs later.

**Lawyers:** Court of Appeals: Judicial Region of Ponce, Panel VIII.

Attorneys for petitioners: Carmen E. Torres Rodríguez, Esq., Marieli Paradizo Pérez, Esq.

Attorneys for appellants: Carlos J. Rivera Ruiz, Esq., Yadira Manfredy Ramos, Esq.

**Judges:** Opinion of the Court issued by the Associate Judge, Mr. MARTÍNEZ TORRES.

Opinion By: Rafael L. Martínez Torres.

**[*412]** Certiorari

In San Juan, Puerto Rico, on September 14, 2016.

It corresponds to us to determine when the prescriptive term to initiate an action of non-contractual civil liability for continued damages begins to run. We take the opportunity to clarify our previous pronouncements on this matter.

Thus, we determine **[*413]** definitively that in the face of damages and losses caused by any culpable or negligent act or omission of a continuous nature, the prescriptive term **[**2]** to initiate an action to request compensation begins to run when the last acts or omissions are verified or the final result occurs.

I

On December 4, 2009, a group of residents of Clarisas Street in the Urbanization La Rambla of Ponce (appellants) submitted a petition for mandamus and a claim on damages against the Municipio Autónomo de Ponce (Municipality). They said that the Clarisas Street was flooding when it rained copiously due to lack of maintenance and problems with the sewage system. They claimed that this situation prevented the entrance and exit of the urbanization and caused damage to vehicles and personal property of residents, as well as health damages and severe emotional anguish. For that reason, they requested that the Municipality correct this problem and compensate them for the damages and losses suffered.

After several procedural steps, the Court of First Instance concluded that the Municipality had the ministerial duty to provide maintenance to water drains and pipes. Therefore, it granted the petition for mandamus. Subsequently, the Municipality filed a motion for **[**3]** summary judgment, to which it attached depositions wherein the appellants admitted that they had known for several years of the recurrent character of the floods. Due to the foreseeability of the damage, the Municipality noted that the damages claimed were continued and their prescriptive period ended a year after the appellants came to know of the **[*414]** recurrent nature of the floods. The appellants opposed and pointed out that this was not the applicable doctrine. The Court of First Instance denied the motion summary judgment. Where relevant, the primary forum concluded, "that the alleged damages suffered by the plaintiffs due to flooding on the Clarisas Street are continuous damage, and that to this day they allegedly continue to occur." Appendix, p. 321. Consequently, that forum determined that the action in damages of the plaintiffs was not time barred, since the last event had not occurred, neither the final result, nor had the cause that generated the damage ceased. Id. However, the primary forum determined that the following facts, among others, were not in controversy: (1) Ms. Matos Socorro Hernández González resides in Clarisas Street **[**4]** since thirty years ago. She suffers the problem of floods practically since she lives in that place; (2) Mr. Gilberto Rodríguez Zayas lived on Clarisas Street of the La Rambla Urbanization for twenty-five years. He indicated that whenever it rains the street floods. The most remote flood event which he remembers occurred in 1995; (3) Mrs. Milagros Rodríguez Rolón resides on Clarisas Street number 1256 since twenty-five years ago. In her deposition, she stated that the street where she lived was flooding since 1988. Appendix, pp. 324-325.

Dissatisfied with the opinion of the Court of First Instance, the Municipality filed a writ of certiorari before the Court of Appeals. There it pointed out, in synthesis, that the primary forum erred in concluding that the damages claimed in the lawsuit were not time barred. On its part, the intermediate appellate forum denied the issuance of the writ, as it concluded that the Court of First Instance did not err when it denied the dismissal for the reason of prescription. Appendix, pp. 13-25. To reach that conclusion, the Court of Appeals concluded, as did the Court of First Instance, that the instant claim **[*415]** is one **[**5]** for "damages that regenerate, since day by day the possibility of floods is still present, for which reason, being damage that persist and the cause that regenerates them not having ceased, they are of a continued nature." Appendix, p. 24.

In disagreement with that decision, the Municipality presented a writ of certiorari before us. It argued that the Court of Appeals erred in affirming the opinion of the Court of First Instance and not dismissing the complaint for being time barred. On October 31, 2014, we accepted the appeal as a writ of certiorari and we issued the same. With the benefit of the appearance of both parties, we move to resolve.

II

A. The prescription is a figure that extinguishes a right because a party does not exercise it in a period of time determined by law. *Fraguada Bonilla v. Hosp. Aux. Mutuo, 2012 TSPR 126, 186 DPR 365, 372-373, 2012 Juris P.R. 139 (2012)*. In our system, unlike others, the extinctive prescription is a substantive-right figure and is regulated by the provisions of the Civil Code.

This statute provides in Art. 1861, 31 LPRA sec. 5291, that: "Actions prescribe by the mere lapse of time specified by law." Id. However, the term to exercise the actions can be interrupted in three ways, namely, by "their institution **[\*\*6]** before the courts, by extrajudicial claim of the creditor, and by any act of acknowledgment of the debt by the debtor." Art. 1873 of the Civil Code, *31 LPRA sec. 5303*.

These norms are "based on the need to put an end to situations of uncertainty in the exercise of rights and on the presumption of abandonment by its owner." *Maldonado Rivera v. Suárez et al., 2016 TSPR 57, 195 D.P.R. 182, pp. 8-9, 195 DPR (2016)* citing J. Puig **[\*416]** Brutau, Expiration, extinctive prescription and usucapion. 3rd ed. Ed. Bosh, Barcelona, 1996, p. 32. Thus, "the inactivity, silence or lack of exercise of the right constitutes the basis of the extinctive prescription because a prolonged situation of legal uncertainty is contrary to the social interest." Id. However, "the prescription is not a rigid figure but [...] admits judicial adjustments, as required by the particular circumstances of the cases and the notion about what is just." *Santiago v. Ríos Alonso, 2002 TSPR 15, 156 D.P.R. 181, 189-190, 2002 Juris P.R. 21 (2002)*.

As a general rule, the one-year prescriptive term provided in Art. 1868 of the Civil Code, 31 LPRA sec. 5298, begins to elapse since the aggrieved party had -- or should have -- knowledge of the damage suffered and was in a position to exercise the cause of action. Art. 1869 of the Civil Code, 31 LPRA sec. 5299; see, also, *Maldonado Rivera v. Suárez* and others, supra, p. 11. **[\*\*7]** For that reason, when the cause of action is for non-contractual civil liability, it is important to specify the type of damage claimed to "be able to establish the starting point or initial moment of the computation and in this way know with certainty what will be its final moment." *Rivera Prudencio v. Mun. de San Juan, 2007 TSPR 19, 170 DPR 149, 167, 2007 Juris P.R. 24 (2007)*.

Several decades ago, we recognized in our system various types of damages. *Rivera Encarnación v. ELA, 13 P.R. Offic. Trans. 498, 113 D.P.R. 383, 386 (1982)*. Among these are the continued damages and the successive damages. *Galib Frangie v. El Vocero de P.R., 138 DPR 560, 566, 1995 Juris P.R. 71 (1995)*. On the one hand, the successive damages are

a sequence of recognitions of harmful consequences on the part of the injured party, that are produced and manifested periodically, or even continuously, but get to be known at different times among which mediated a finite lapse of time, without at any time the subsequent damages being foreseeable, nor it being possible to discover them using reasonable diligence. In other words, it is **[*417]** a sequence of certain repeated damages (without it being necessary for them to be identical in their nature, degree, extent and magnitude) whose repetition is not predictable in a legal sense nor are susceptible of being discovered using reasonable diligence. [...] Each of the unitary damages **[**8]** that together constitute the successive damages present in said examples constitutes a legal unit of 'damage' that originates the corresponding cause of compensatory action. _Santiago v. Ríos Alonso_, supra, p. 191.

On the other hand, [HN1] the continued damages are

those produced by one or more culpable or negligent acts attributable to the actor, contemporaries or not, resulting in uninterrupted, sustained, lasting, without interruption, linked together, injurious consequences, which being well-known make also known – by being predictable – the continued and uninterrupted nature of their effects, becoming at that moment a certain damage composed by actual damage elements (one that has already occurred) and by foreseeable future damage and therefore certain. _Rivera Prudencio v. Mun. San Juan_, supra, p. 167.

As we see, [HN2] the difference between both types of damages is that in the successive, each injury caused by a wrongful or negligent act or omission produces a different damage, which in turn generates an independent cause of action, while in the continued a single cause of action is generated that comprises all the actual damages, both the actual and the **foreseeable** in the future, as a consequence of one continuous tortuous behavior. This difference **[**9]** implies that in these two scenarios the prescriptive term to file a claim for compensation begins to elapse in different moments.

It is worth clarifying that although traditionally we refer to the doctrines under study as "continuous damages" or "successive damages", what in reality is continuous or successive in these scenarios is the act or omission that produces the damage and not, necessarily, the injury suffered.

Regarding the continued damage, we so advised over sixty years ago when we explained that the essence of that doctrine "does not rest **[*418]** on the nature [...] of the harm caused by the disturbance, but on the continuous or progressive character of the **cause** [tortious act or omission] that originates it, that constantly renews the harmful action". (Emphasis supplied) _Arcelay v. Sánchez Martínez_, 77 P.R.R. 782, 77 D.P.R. 824, 838 (1955). Because of this, we understand that a more accurate classification is "damages caused by continuous acts [or omissions]." _Capella v. Carreras_, 57 P.R.R. 250, 57 DPR 258, 266 (1940). In this way, we avoid the confusion that generates the translation from English into Spanish of the term tort as damage or damages. Note that when that word is used in plural it describes the area of Law that studies extracontractual civil liability, but at the same time **[**10]** can be used to replace the terms harms or injuries.

Our previous pronouncements on this matter, particularly with regard to the so-called continued damage, have been imprecise, since we have applied contradictory norms. That has led to doctrinal confusion. See J.J. Álvarez González, Analysis of the Term 2006-2007 - Extracontractual civil liability, 77 Rev. Jur. UPR 603, 617-619 (2008) and J.J. Álvarez González, Analysis of the Term 2001-02 - Extracontractual civil liability, 72 Rev. Jur. UPR 615, 638-642 (2003). Therefore, it is necessary to clarify the rule that governs our system in these cases.

More than seventy years ago, in *Capella v. Carreras*, supra, a case on a nuisance,[1] we established that the "damages and losses caused by continuous acts ... are latent until the cause that generates them ceases. Well it can be said that in such case the harmful action is renewed **[*419]** from day to day, from hour to hour, from minute to minute, from second to second." Consequently, we concluded that the lawsuit was not time-barred because at the time of claiming compensation, the disturbance remained in force. Subsequently, in *Arcelay v. Sánchez Martínez, 77 P.R.R. 782, 77 D.P.R. 824 (1955)*, where the damage was the product of noise and stench that were constantly produced by a pasteurizing plant **[**11]**, we reiterated the aforementioned norm. In this way, we stated that this rule "does not rest on the intrinsic nature of the damage caused by the disturbance, but on the continuous or progressive character of the cause that originates it, which constantly renews the harmful action". Id., P. 839. In addition, we indicated that this rule not only applied when claiming compensation for damages caused to the plaintiff's property, but also applied to the scenarios where personal damages are claimed. We also validated that the plaintiff amended his claim to request compensation for damages caused up to the time of the trial because they continued after the lawsuit was filed. Id., Pgs. 846-848. We justified our action by stating that in this way the "multiplicity of actions would be avoided, provided that the wrong that produces the damage is of a continuous nature, and that the subsequent damages are similar to those that gave rise to the original claim". Id., P. 847. Similarly, in *Seda et al. v. Miranda Hnos. & Co., 88 P.R.R. 344, 88 DPR 355 (1963)*, we ratified this same norm and we expressed that it was possible to recover damages "for all the time of the duration **[**12]** of the nuisance". Id., P. 361. Up to that moment our doctrine on this matter did not cause further confusion. The discrepancy we attend today began decades later, when this Court faced cases where nuisances did not properly caused the damages.

In *Galib Frangie v. El Vocero de P.R., supra, p. 575*, a case in which *continued damages* were not before our **[*420]** consideration, but *successive damages* caused by the publication of a series of libelous articles, we established that at the time of determining when the prescriptive term begins in these scenarios "The determining factor is the moment *when* the damages production *begins*, which should be taken into consideration as the beginning of the prescription term, by assuming that the injured parties knew them since **[**13]** then and that they could exercise the cause of action". (Emphasis on original). Although these expressions constitute *obiter dicta*, they were repeated in our jurisprudence and created the doctrinal confusion that we are discussing today. See J.J. Álvarez González, Analysis of the Term 2001-02 - Extracontractual civil liability, supra,

---

[1] In cases of public nuisances, Art. 277 of the Code of Civil Procedure, 32 LPRA sec. 2761, creates a cause of action so that a person can request that these cease and to be compensated for the damages created. Despite this, with regard to compensation, our analysis in this type of case has focused on Art. 1803 of the Civil Code of 1902, or its current equivalent, Art. 1802 of the Civil Code of 1930, 31 LPRA sec. 5141.

p. 640, n. 83; Ruth E. Ortega-Vélez, Jurisprudence Extracontractual Civil Liability, 2nd Ed. Rev., Ediciones Scisco, 2009, p. 138.

A short time later, in *Sánchez et al. v. A.E.E., 142 D.P.R. 880, 1997 Juris P.R. 45 (1997)*, a brief Judgment, several judges issued concurring and dissenting Opinions where they addressed, directly or indirectly, this same issue. The then Associate Judge Mr. Hernández Denton stated the following: "Modern Spanish jurisprudence has declared with general character that in case of continued damages the computation of the limitation period begins at the moment of the production of the final result". (Quotations omitted). Id., P. 921 (Dissenting opinion of Associate Judge Mr. Hernández Denton). Likewise, the then Associate Judge Mrs. Naveira de Rodón addressed this point indirectly by stating that "[t]he prescriptive term in actions for the creation of a hostile work environment **[**14]** should begin to run from the **cessation** of that environment. This norm recognizes that the prescriptive term [...] must begin to elapse when the circumstances that could hinder the exercise of the action **dissipate**". (Emphasis supplied). **[*421]** id., P. 913 (Dissenting opinion of the Associated Judge Ms. Naveira de Rodón).

Thereafter, in *Santiago v. Ríos Alonso, supra, p. 195*, we determined that before a pattern of physical and emotional abuse, "the last incident of abuse, when the victim breaks the cycle of abuse and recognizes that has suffered a certain damage, is the one that activates the cause of action and, consequently, constitutes the moment from which it can be executed". (Emphasis deleted). However, to justify this result, we cited the case of *Galib Frangie v. El Vocero of P.R., supra*.

Subsequently, *in Nazario v. ELA, 2003 TSPR 116, 159 DPR 799, 807, 2003 Juris P.R. 116 (2003)*, a published Judgment, we applied again the norm of *Galib Frangie v. El Vocero de P.R., supra*, and we indicated that in cases of continued damages "the determining factor to establish the beginning of the limitations period [...] is the moment in which the production of the damage begins". (Emphasis on original). We reasoned that this was because "being foreseeable, it is understood that the term begins to run when the injured party knows, for the first time, **[**15]** the damage and the person responsible for it and that said damage includes all its consequences as possible to foresee." *Nazario v. ELA, supra, p. 807.* In addition to these pronouncements were in a Judgment, which does not establish precedent, it is also important to mention that in that case the majority of the Court finally determined that the dispute before consideration was the successive and not continued damages, so it did not apply the aforementioned norm. However, Associate Judge Mr. Corrada Del Río issued a dissenting opinion, because he understood that the damages in question were continued. There, after reviewing the different norms on prescription in these types of cases, he suggested that in our system the norm that computes the limitation period should be applied as of the **[*422]** moment in which the cause that generates the damages ends. *Nazario v. ELA, supra, pp. 828-829* (Dissenting opinion of Associate Judge Mr. Corrada del Río) ("We understand that because the continued damages are inexorably tied to the cause that originates them, the definitive knowledge of the losses caused is verified on the day that the source of these ceases, since as long as it exists, and therefore more damages related to it are foreseeable, **[**16]** we can not speak of a definitive result "). (Emphasis deleted).

Subsequently, in _Rivera Prudencio v. Mun. San Juan, supra, p. 167_, we set out that "the prescriptive term to claim for damages of a continuous nature begins to elapse when the **last of the acts is verified or the final result is produced**". (Emphasis supplied). However, as in the previous case, we finally concluded that the damages in question were successive, so we did not apply this rule, whereby those pronouncements on the issue we are dealing with today constitute _obiter dicta_. Later, in _Umpierre Biascoechea v. Banco Popular, 2007 TSPR 21, 170 DPR 205, 2007 Juris P.R. 26 (2007_), (Judgment), Associate Justice Mrs. Rodríguez Rodríguez issued a Conforming Opinion in which she stated that, in accordance with modern civilist doctrine, "the beginning of the limitations period to claim for [...] [continued damages] commences at the moment of the production of the final result or until the last of the acts is verified". (Emphasis on the original). _Id., pp. 215-219._ Likewise, the then Associate Judge Mrs. Fiol Matta issued a dissenting opinion in which she agreed, as to this point, with what was expressed by the Associate Judge Mrs. Rodríguez Rodríguez. _Id., pp. 230-231._

As we can see, our jurisprudence is inconsistent **[**17]** as to when the limitations term begins to run in cases of damages caused by continuous acts or omissions. One of the reasons for these contradictions is the apparent tension between the cognitive theory of damage that governs our system and the doctrinal trend that postulates that the limitations term **[*423]** in these cases begins to elapse when the final result is produced. This is due to the fact that, in the majority of the cases, the claimant knows that he or she is suffering damage from the beginning of the continuous culpable or negligent acts or omissions and not since the final result is produced. H. Brau del Toro, Extracontractual Damages in Puerto Rico, 2nd ed., San Juan, Pubs. JTS, 1986, Vol. II, Chap. X, p. 582. This led us to force exceptions to the rule in order to obtain fair results according to the facts of the cases. Thus, we see that in cases where it was sought to deter the nuisances and combat domestic violence, we concluded that the limitations term began to elapse with the final result or the last tortious act or omission, while before other facts, we resolved the opposite.

Another of the **[**18]** reasons why there are inconsistencies in the doctrine is that our cases have been based on authorities from other jurisdictions that have changed their position over time. For example, the precedents of the middle of the last century were anchored, to a large extent, in sources of the American _common law_, while the most recent cases cite with approval civilists scholars, who in turn, comment on Spanish jurisprudence. The latter has also varied in recent times. Therefore, in addition to reviewing our previous pronouncements on this matter, we understand that it is important to examine the treatment that other jurisdictions have given to the controversy before our consideration.

In this regard, the scholar Puig Brutau comments that "[a] few [Spanish] judgments have estimated that the year to appeal must be counted, not at the moment of the cessation of the damage, but since it begins to occur, because since when the same was known the action could have been exercised. But, in other cases, the jurisprudence has clearly tilted in favor of the **[*424]** other possibility". J. Puig Brutau, Expiration, extinctive prescription and usucapion, 3rd ed., **[**19]** Barcelona, Ed. Bosh, 1996, p. 77 citing Díez-Picazo, The prescription in the Civil Code, Barcelona, 1964 p. 240. See also, Reglero Campos in Albaladejo and Díaz Alabar, Comments to the Civil Code and Foral Compilations, Madrid, Ed. EDERSA, 1994, Volume XXV, Vol. 2, pp. 454-464.

On the one hand, the most strict aspect of the doctrine has its origin in several judgments that the Spanish Supreme Court issued at the beginning of the last century that started "from the moment of the beginning of the production of damages as the originator of the prescription, presupposing that the injured parties knew them since then and that they were able to exercise the pertinent action without obstacle". J. Santos Briz, Civil responsibility, 7th ed., Madrid, Ed. Montecorvo, 1993, p. 1187. On the other hand, the second aspect is found in modern Spanish doctrine that exhibits "a more elastic tendency in placing the beginning of the prescription not at the beginning of the damage, but **at the realization of its total verification**". (Emphasis supplied) Id., p. 1188. In this same line, "the jurisprudence has radically changed the course followed by the one that was dominant until the 1960s [...], noting that in the **[**20]** cases of continued damage, the *dies a quo* of the period of limitations should not be remitted to the date of the occurrence of the accident, but to the moment in which the injured party knows in a certain way the looses definitively caused". Albaladejo and Díaz Alabar, op. cit., pp. 460-461. See, also, I. Sierra Gil de la Cuesta, Commentary on the Civil Code, Ed. Bosch, 2000, T.9, p. 554. As a result, the Supreme Court of Spain has stated in recent cases that "is consolidated jurisprudential doctrine that which refers the beginning of the calculation of the statute of limitations in this type of cases when it comes to continued damages [...] to the one in which the **final result** is produced." (Emphasis supplied) Díez-Picazo **[*425]** and Ponce de León, The extinctive prescription in the Civil Code and in the jurisprudence of the Supreme Court, Ed. Aranzadi, 2nd ed., 2007, p. 253. That is to say, "the computation of the limitation period does not begin **until the production of the final result**, when it is not possible to split the series pursued into different stages or differentiated facts." (Emphasis supplied) Id., p. 1003

Spanish scholars add that it is not always easy "to determine [...] when [**21] that 'final result' is produced or has been produced [because] in relation to the concept of continued damage it is offered to us as something alive, latent and precisely connected to the originating and determining cause of the same, which subsists and is maintained until its proper correction". Albaladejo and Díaz Alabar, op. cit., p. 460. Now, the understanding in modern Spanish doctrine identifies that moment when "the injured party knows in a certain way the **losses definitively caused**". (Emphasis supplied) Díez-Picazo and Ponce de León, op cit., P. 1003. That is, when the culpable or negligent conduct has ceased to cause the damages for which compensation is claimed.

On the other hand, most of the states of the Union follow a norm similar to that of the Spanish Civil Law regarding this matter. "The continuing tort doctrine constitutes an established exception to the usual rule that a statute of limitations starts at the time of injury, in those cases [...] the statute does not begin to run [...] until the negligent or other wrongful act or incident has terminated. " Speiser, et al., The American Law of Torts, West Group, 2013, Vol. 1A, sec. 5:27, p. 347-353. This doctrine, **[**22]** sometimes known as "continuing tort doctrine" and in others as "continuing violation doctrine", has been applied to cases of extracontractual civil liability for emotional abuse, nuances, professional malpractice, insurance disputes, discrimination, intrusions and explosions, among others. Id. See also Elad Peled, Rethinking the Continuing Violation **[*426]** Doctrine: The Application of Statutes of Limitations to Continuing Tort Claims, *41 Ohio N.U.L. Rev. 343 (2015)*.

B. After examining our jurisprudence, the modern precedents in other jurisdictions that we find highly persuasive, as well as the recent comments of different scholars, we understand that it is best to standardize our doctrine in order to give certainty to our system. Thus, HN3 [] we resolve that before damages caused by any culpable or negligent act or omission of a continued nature, the limitations period to initiate an action to request compensation begins to elapse when the last acts or omissions are verified or the final result is produced, whichever is later. This norm is not incompatible with the cognitive theory of damage that governs our system. [**23] "Because the continued damages are inexorably linked to the cause that originates them, the definitive knowledge of the losses caused is verified on the day that the source ceases, since as long as it exists, and therefore more damages related to it are foreseeable, we cannot talk about a definitive result". _Nazario v. ELA, supra, p. 828_ (Dissenting opinion of the Associate Judge Mr. Corrada del Río).[2] Naturally, this does not exclude that a plaintiff can prove, [*427] in addition, that he or she knew the damage suffered at a moment other than the one that ceased the cause that generated it.

We find no reason not to modernize our doctrine as it has happened in other jurisdictions. Nor do we find a valid justification for dealing differently with cases where the damage is not _strictly_ produced by nuances or acts of domestic violence. Independently of the nature or type of act or omission that generates the damage, in the context of continued damages, the injured party is suffering a damage that shall not cease, and on the contrary, it shall be repeated until the generating cause ceases to exist. Therefore, the norm we announce today is applicable to _all_ cases of damages caused by continued acts or omissions.

Neither are we persuaded by the alternative proposals that when determining [**25] when a limitations period begins to elapse, for example, they oblige the courts to analyze whether, despite claiming for continued damages, the damages for which compensation is claimed have sufficient substantivity and autonomy of their own, or if on the contrary, the damage for which it is claimed is of a unitary nature and without its own substantivity. Laracruz Berdejo et al., Elements of Civil Law II, 5th Ed., Madrid, Ed. Dykinson, 2013, T. II, Vol. 2, p. 492. Likewise, we are not convinced by Professor Brau del Toro's proposal that there should be a distinction in the treatment given to permanent nuances and continuous nuances for prescription purposes. H. Brau del Toro, op. cit., pp. 582-583. These alternatives, although they may have their merit, denaturalize the essence of the continued damages, create a new submodality of these and, in turn, equate the same with successive damages for prescription purposes. The

---

[2] It should be emphasized that sometimes, as in this case, dissident opinions of the past find an echo in the present and become precedents for the future. "A dissent in a court of last resort is an appeal to [...] the intelligence of a future day, when a later decision may possibly correct the error into which the dissenting judge believes the court to have been betrayed." Charles Evans Hughes, The Supreme Court of the United States 68 (1936). The fact that a position does not get the majority of the votes at any given time does not necessarily mean that it is wrong. It simply did not persuade the majority of the judges who composed the Supreme Court [**24] at any given time. After all, this Court is not supreme because it is infallible; it is only supreme in hierarchy. For this reason, in reexamining our jurisprudence, this time we are persuaded by the previous statements of several judges of this Court, who from their respective conformity, concurrent or dissenting Opinions, addressed the issue that we resolve today definitively.

doctrine that we now incorporate definitively into our system seems to us more appropriate.

**[*428]** The opposite implies unnecessarily splitting the causes of action, since we would oblige the injured parties to present their complaints since the damages are initiated **[**26]**, even when the source that generates them has not ceased and, on the contrary, continues and will continue to cause additional damages. This leads to excessively extensive litigation, as the plaintiffs have to constantly amend their claims to include allegations and claims for damages suffered, although for the same cause, after the filing of the original claim. "In this context, the balance of the interests involved in the limitations terms leans in favor of the plaintiffs, since the dismissal of their cause of action would expose them to a [culpable or negligent act or omission], which, in theory, could continue indefinitely." (Our translation) Peled, op cit., p. 348, citing Tyler T. Ochoa & Andrew J. Wistrich, The Puzzling Purposes of Statutes of Limitations, 28 PAC. L.J., 453, 505 (1997).

Unlike what could be intimidated, this rule does not encourage plaintiffs to sit idle; rather, it discourages people from continuously acting in a culpable or negligent manner. In this way, we do not penalize a plaintiff who submits his or her claim when one year has not elapsed since the cause that generated the damages for which he seeks compensation ceased. Recall that the focus of analysis **[**27]** in the doctrine before our consideration is the continuous act or omission and not properly the damages suffered. _Arcelay v. Sánchez, supra, p. 838._ If in our system the interruption and the beginning of a new limitations term is recognized by extrajudicial acts, we must also recognize that the limitations term does not begin when the cause of the damage has not ceased. In that sense, in both scenarios the right of the injured parties to claim compensation for the damages they suffered is preserved.

 **[*429]** On the other hand, we constantly emphasize the value of the precedent in our system. However, our decisions are not a dogma written in stone. Therefore, "when the reasoning of a decision no longer resists a careful analysis, we are not obliged to follow it". _Fraguada Bonilla v. Hosp. Aux. Mutual, supra, p. 391._ "[T] he inspiring purpose of the doctrine of stare decisis is to achieve stability and certainty in the law, but never to perpetuate errors." _Am. Railroad Co. of P.R. v. Industrial Commission, 61 D.P.R. 324, 326 (1943)._ However, it will only apply to set aside precedents: "(1) if the previous decision was clearly wrong, (2) if its effects on the rest of the system are adverse, and (3) if the number of people who relied on it is limited." _People v. Delgado, 2008 TSPR 174, 175 DPR 1, note 8 (2008); González Natal v. Merck Sharp & Dohme Química de Puerto Rico, Inc., 2006 TSPR 2, 166 D.P.R. 659, 688, 2006 Juris P.R. 10 (2006)._

In the light of all **[**28]** the foregoing and due to the confusion that has caused in our doctrine, we render ineffective our previous pronouncements contrary to this Opinion, in particular, those stated in _Galib Frangie v. El Vocero de P.R., supra,_ and its progeny, **on this particular matter**. With this, we remove that thorn from our jurisprudence and eliminate the ailments that this causes to our doctrine of damages.

III

In this case, both the Municipality and the respondents are in agreement with the determinations of the respondent forums that the cause that generates the damages claimed is continuous. The damages are the result of the floods produced as a consequence of the defects of the sewers of the street where the respondents live. The only discrepancy is how the limitations period should be computed, since the respondents admitted in several depositions that they knew of the recurrence of the floods for many years.

**[*430]** In analyzing these facts in the light of the rule discussed, we conclude that the claim of caption **is not time-barred**, since the last acts or omissions have not been verified nor has the final result been produced. Rather, we are faced with a cause of **[**29]** action that regenerates day by day as long as the lack of maintenance of the sewers and pipes subsists. That causes recurrent and predictable floods.

IV

For the reasons stated above, we affirm the determination of the Court of Appeals. Consequently, the case is returned to the Court of First Instance, Superior Court of Ponce, to continue the proceedings.

Rafael L. Martínez Torres

Associate Judge

JUDGMENT

In San Juan, Puerto Rico, September 14, 2016.

For the reasons stated above, in the forgoing Opinion, which is made an integral part of this Judgment, we affirm the determination of the Court of Appeals. Consequently, the case is returned to the Court of First Instance, Superior Court of Ponce, to continue the proceedings.

It was agreed by the Court and certified by the Secretary of the Supreme Court. The Associate Judge, Mrs. Rodríguez Rodríguez, is satisfied with the determination of this Court and states the following expression: "I am pleased to record my agreement with the opinion expressed today by a majority of this Forum. As the majority opinion emphasizes, 'this Court is not supreme because it is infallible, **[**30]** it is only supreme in hierarchy'". _Carlos J. Rivera Ruiz, et al. v. Municipio Autónomo de Ponce, et al., 2016 TSPR 197, note 2, 19 D.P.R. (2016)._

The course of the doctrine of continued damages in our jurisprudence has been an extensive one. In spite of this, during the last twenty years, the consensus regarding the specific controversy that we are dealing with today could be described as elusive. This is despite the fact that, nine years ago, I tried to persuade a majority of this Court to adopt the norm that we are ruling today. _See Umpierre Biascoechea v. Banco Popular, 2007_

*TSPR 21, 170 D.P.R. 205, 2007 Juris P.R. 26 (2007)* (Rodríguez Rodríguez, Opinion of conformity). However, it was necessary to wait.

The doctrine of the judicial precedent guides the proceeding of this Court in order to safeguard the uniformity in the interpretation of the Law. Now, we can not rest on this principle when its application has the effect of perpetuating an erroneous reading of the Law. *See Town v. Díaz de León, 2009 TSPR 142, 176 D.P.R. 913, 922 (2009); People v. Pérez Pou, 2009 TSPR 5, 175 D.P.R. 218, 251-252 (2009)* (Rodríguez Rodríguez, Dissident Opinion).

**[*431]** Finally, I am satisfied that, definitively, we have managed to harmonize the doctrine of continued damages with the figure of extinctive prescription. Thus, we provide greater stability to the general theory of Extracontractual Civil Liability Law.

Juan Ernesto Dávila Rivera

Secretary of the Supreme Court

# <u>CERTIFICATION</u>

**CERTIFIED:** To be a true and correct translation of the original document(s) from Spanish into English.  Furthermore, that I am a Certified Interpreter & Translator for the Administrative Office of the U. S. Courts, named on the list of Qualified Interpreters/Translators, at the U.S. District Court for the District of Puerto Rico.

*Carlos T. Ravelo*

**Carlos T. Ravelo, USCCI**



**User Name:** JOSE QUETGLAS

**Date and Time:** Saturday, December 23, 2017 11:03:00 AM EST

**Job Number:** 58648680

## Document (1)

1.  *Carlos J. Rivera Ruiz, et al., Recurridos v. Municipio Autónomo de Ponce, et al., Peticionarios, 196 D.P.R. 410*

    **Client/Matter:** -None-

    **Search Terms:** Rivera Ruiz et al. v. Mun. de Ponce et al., 2016 TSPR 197

    **Search Type:** Natural Language

    **Narrowed by:**

    | Content Type | Narrowed by |
    |---|---|
    | Cases | -None- |

⬥ Positive
As of: December 23, 2017 4:03 PM Z

# *Carlos J. Rivera Ruiz, et al., Recurridos v. Municipio Autónomo de Ponce, et al., Peticionarios*

Tribunal Supremo De Puerto Rico

14 de septiembre de 2016

AC-2014-40

**Reportero**

196 D.P.R. 410 *; 2016 PR Sup. LEXIS 199 **; 2016 TSPR 197

Carlos J. Rivera Ruiz, et al., Recurridos v. Municipio Autónomo de Ponce, et al., Peticionarios

**Historia Previa: [**1]** Materia: Responsabilidad Civil Extracontractual — El término prescriptivo para solicitar resarcimiento en los casos de daños y perjuicios ocasionados por cualquier acto u omisión culposo o negligente de carácter continuado, comienza a transcurrir cuando se verifiquen los últimos actos u omisiones o cuando se produzca el resultado definitivo, lo que sea posterior.

## Resumen de Caso

### Descripcion

HOLDINGS: [1]-La acción por daños y perjuicios presentada por los residentes contra el municipio, por daños causados por las inundaciones producidas como consecuencia de los defectos de las alcantarillas en la calle donde viven, no estaba prescrita porque que no se habían verificado los últimos actos u omisiones ni se había producido el resultado definitivo y era previsible que los daños continuaran mientras subsistiera la falta de mantenimiento de las alcantarillas y tuberías; [2]-El término prescriptivo para incoar una acción de daños y perjuicios causados por cualquier acto u omisión culposo o negligente de carácter continuado comienza a transcurrir cuando se verifiquen los últimos actos u omisiones o se produzca el resultado definitivo, lo que sea posterior.

### Resultado

Se confirmó la determinación del Tribunal de Apelaciones. Se devolvió el caso al Tribunal de Primera Instancia para la continuación de los procedimientos.

### Terminos Principales

casos, continuados, causa, este, momento, cuando, actos, prescriptivo, como, perjuicios, doctrina, acción, prescripción, resultado, nuestro, estos, nuestra, desde, definitivo, comienza, esa, Opinión, sobre, jurisprudencia, nfasis, ordenamiento, transcurrir, Derecho, Responsabilidad, Sentencia

## Tesis de LexisNexis ®

Torts > ... > Statute of Limitations > Begins to Run > Continuing Violations

### *HN1*[⬇]  Begins to Run, Continuing Violations

Los daños continuados son aquellos producidos por uno o más actos culposos o negligentes imputables al actor, coetáneos o no, que resultan en consecuencias lesivas ininterrumpidas, sostenidas, duraderas sin interrupción, unidas entre sí, las cuales al ser conocidas hacen que también se conozca — por ser previsible — el carácter continuado e ininterrumpido de sus efectos, convirtiéndose en ese momento en un daño cierto compuesto por elementos de daño actual y de daño futuro previsible y por tanto cierto.

Torts > Procedural Matters > Statute of Limitations > Begins to Run

### *HN2*[⬇]  Statute of Limitations, Begins to Run

La diferencia entre los daños sucesivos y los daños continuados es que en los sucesivos, cada lesión a causa de un acto u omisión culposa o negligente produce un daño distinto, que a su vez, genera una causa de acción independiente, mientras en que en los continuados se genera una sola causa de acción que

comprende todos los daños ciertos, tanto los actuales como los previsibles en el futuro, como consecuencia de una conducta torticera continua. Esa diferencia implica que en estos dos escenarios el término prescriptivo para presentar una reclamación de indemnización comienza a transcurrir en momentos distintos.

Torts > ... > Statute of Limitations > Begins to Run > Continuing Violations

*HN3*[⬇] **Begins to Run, Continuing Violations**

Ante daños y perjuicios causados por cualquier acto u omisión culposo o negligente de carácter continuado, el término prescriptivo para incoar una acción para solicitar resarcimiento comienza a transcurrir cuando se verifiquen los últimos actos u omisiones o se produzca el resultado definitivo, lo que sea posterior.

**Abogados:** Tribunal de Apelaciones: Región Judicial de Ponce, Panel VIII.

Abogadas de la parte Peticionaria: Lcda. Carmen E. Torres Rodríguez, Lcda. Marieli Paradizo Pérez.

Abogados de la parte Recurrida: Lcdo. Carlos J. Rivera Ruiz, Lcda. Yadira Manfredy Ramos.

**Jueces:** Opinión del Tribunal emitida por el Juez Asociado señor MARTÍNEZ TORRES.

**Opinion Por:** Rafael L. Martínez Torres

# Opinion

 [*412] Certiorari

En San Juan, Puerto Rico, a 14 de septiembre de 2016.

Nos corresponde determinar cuándo comienza a transcurrir el término prescriptivo para incoar una acción de responsabilidad civil extracontractual por *daños continuados*. Aprovechamos la ocasión para aclarar nuestros pronunciamientos previos sobre este asunto. Así, resolvemos [*413] de forma definitiva que ante daños y perjuicios causados por cualquier acto u omisión culposa o negligente de carácter continuado, el término prescriptivo [**2] para incoar una acción para solicitar resarcimiento comienza a transcurrir cuando se verifiquen los últimos actos u omisiones o se produzca

el resultado definitivo.

I

El 4 de diciembre de 2009, un grupo de residentes de la Calle Clarisas en la Urbanización La Rambla de Ponce (recurridos), presentaron una petición de *mandamus* y demanda sobre daños y perjuicios contra el Municipio Autónomo de Ponce (Municipio). Expresaron que la Calle Clarisas se inundaba cuando llovía copiosamente debido a la falta de mantenimiento y a problemas con el sistema de alcantarillado. Alegaron que esta situación impedía la entrada y salida de la urbanización y provocaba daños a los vehículos y propiedad mueble de los residentes, así como daños a la salud y severas angustias emocionales. Por esa razón, solicitaron que el Municipio corrigiera este problema y les compensara por los daños y perjuicios sufridos.

Luego de varios trámites procesales, el Tribunal de Primera Instancia concluyó que el Municipio tenía el deber ministerial de proveerle mantenimiento a las alcantarillas y tuberías pluviales. Por lo tanto, proveyó ha lugar a la petición de *mandamus*. Posteriormente, el Municipio presentó una moción de sentencia [**3] sumaria, a la que acompañó unas deposiciones en las que los recurridos admitieron que conocían desde hacía varios años el carácter recurrente de las inundaciones. Debido a la previsibilidad de los daños, el Municipio señaló que los daños reclamados eran continuados y su período prescriptivo culminó un año después de que los recurridos advinieron en conocimiento del carácter  [*414] recurrente de las inundaciones. Los recurridos se opusieron y señalaron que esa no era la doctrina aplicable.

El Tribunal de Primera Instancia denegó la moción de sentencia sumaria. En lo pertinente, el foro primario concluyó "que los alegados daños sufridos por los demandantes debido a las inundaciones en la calle Clarisas son daños continuados, y que al día de hoy alegadamente continúan ocurriendo". Apéndice, pág. 321. En consecuencia, ese foro determinó que la acción en daños de la parte demandante no estaba prescrita, puesto que no se había dado el último suceso, ocurrido un resultado final, ni cesado la causa que generaba los daños. *Íd.* No obstante, el foro primario determinó que los siguientes hechos, entre otros, no estaban en controversia: (1) la Sra. Matos Socorro Hernández González reside en la Calle Clarisas [**4] hace treinta años. Sufre el problema de las inundaciones prácticamente desde que vive en ese lugar; (2) El Sr. Gilberto Rodríguez Zayas vivió en la Calle las Clarisas de la Urbanización La Rambla por espacio de

veinticinco años. Este indicó que siempre que llueve la calle se inunda. El evento de inundación más remoto del que se acuerda ocurrió en el 1995; (3) La Sra. Milagros Rodríguez Rolón reside en la Calle Clarisas número 1256 hace veinticinco años. En su deposición, declaró que la calle donde residía se inundaba desde 1988. Apéndice, págs. 324-325.

Insatisfecho con el dictamen del Tribunal de Primera Instancia, el Municipio presentó un recurso de certiorari ante el Tribunal de Apelaciones. Allí señaló, en síntesis, que el foro primario erró al concluir que los daños reclamados en la demanda no estaban prescritos. Por su parte, el foro apelativo intermedio denegó la expedición del recurso, pues concluyó que el Tribunal de Primera Instancia no erró cuando denegó la desestimación por el fundamento de prescripción. Apéndice, págs. 13-25. Para llegar a esa conclusión, el Tribunal de Apelaciones concluyó, al igual que el Tribunal de Primera Instancia, que la presente reclamación **[\*415]** es una **[\*\*5]** por "daños que se regenera[n] ya que día a día la posibilidad de inundaciones sigue estando presente, por lo que, al ser un daño que persiste y no habiendo cesado la causa que los regenera, los mismos son de carácter continuado". Apéndice, pág. 24.

En desacuerdo con esa decisión, el Municipio presentó un recurso de certiorari ante nos. Sostuvo que el Tribunal de Apelaciones erró al confirmar el dictamen del Tribunal de Primera Instancia y no desestimar la demanda por estar prescrita. El 31 de octubre de 2014, acogimos la apelación como un recurso de certiorari y expedimos el auto. Con el beneficio de la comparecencia de ambas partes, pasamos a resolver.

II

A. La prescripción es una figura que extingue un derecho debido a que una parte no lo ejerce en un período de tiempo determinado por ley. _Fraguada Bonilla v. Hosp. Aux. Mutuo, 2012 TSPR 126, 186 DPR 365, 372-373, 2012 Juris P.R. 139 (2012)._ En nuestro ordenamiento, a diferencia de otros, la prescripción extintiva es una figura de derecho sustantiva y está regulada por las disposiciones del Código Civil. _Íd._ Este estatuto dispone en su Art. 1861, _31 LPRA sec. 5291,_ que: "Las acciones prescriben por el mero lapso del tiempo fijado por la ley". Sin embargo, el término para ejercer las acciones se puede interrumpir de tres maneras, a saber, por "su ejercicio ante **[\*\*6]** los tribunales, por reclamación extrajudicial del acreedor y por cualquier acto de reconocimiento de la deuda por parte del deudor". Art. 1873 del Código Civil, _31 LPRA sec. 5303._

Estas normas tienen "su fundamento en la necesidad de poner término a las situaciones de incertidumbre en el ejercicio de los derechos y en la presunción de abandono por parte de su titular". _Maldonado Rivera v. Suárez y otros, 2016 TSPR 57, 195 D.P.R. 182, págs. 8-9, 195 DPR (2016)_ citando a J. Puig **[\*416]** Brutau, Caducidad, prescripción extintiva y usucapión. 3ra ed. Ed. Bosh, Barcelona, 1996, pág. 32. Así, "la inactividad, silencio o falta de ejercicio del derecho constituye el fundamento de la prescripción extintiva por ser unilateral al interés social una prolongada situación de incertidumbre jurídica". _Íd._ No obstante, "la prescripción no es una figura rígida sino que [...] admite ajustes judiciales, según sea requerido por las circunstancias particulares de los casos y la noción sobre lo que es justo". _Santiago v. Ríos Alonso, 2002 TSPR 15, 156 D.P.R. 181, 189-190, 2002 Juris P.R. 21 (2002)._

Como norma general, el término prescriptivo de un año dispuesto en el Art. 1868 del Código Civil, _31 LPRA sec. 5298,_ comienza a transcurrir desde que el agraviado tuvo -o debió tener- conocimiento del daño que sufrió y estuvo en posición de ejercer su causa de acción. Art. 1869 del Código Civil, _31 LPRA sec. 5299;_ véase, además, _Maldonado Rivera v. Suárez y otros, supra, pág. 11_ **[\*\*7]** Por esa razón, cuando la causa de acción es por responsabilidad civil extracontractual, es importante precisar el tipo de daño por el que se reclama, para "poder establecer el punto de partida o momento inicial del cómputo y de esta forma conocer con certeza cuál será su momento final". _Rivera Prudencio v. Mun. de San Juan, 2007 TSPR 19, 170 DPR 149, 167, 2007 Juris P.R. 24 (2007)._

Desde hace varias décadas, reconocimos en nuestro ordenamiento varios tipos de daños. _Rivera Encarnación v. ELA, 13 P.R. Offic. Trans. 498, 113 D.P.R. 383, 386 (1982)._ Entre estos se encuentran los llamados _daños continuados_ y los _daños sucesivos._ _Galib Frangie v. El Vocero de P.R., 138 DPR 560, 566, 1995 Juris P.R. 71 (1995)._ Por un lado, los _daños sucesivos_ son

una secuencia de reconocimientos de consecuencias lesivas por parte del perjudicado, las que se producen y manifiestan periódicamente, o aun continuamente, pero que se van conociendo en momentos distintos entre los que medió un lapso de tiempo finito, sin que en momento alguno sean previsibles los daños subsiguientes, ni sea

posible descubrirlos empleando diligencia razonable. Dicho en otras palabras, se trata [*417] de una secuencia de daños ciertos que se repiten (sin que sea necesario que sean idénticos en su naturaleza, grado, extensión y magnitud) cuya repetición no es previsible en sentido jurídico ni son susceptibles de ser descubiertos empleando diligencia razonable. [...] Cada uno de los daños [**8] unitarios que en conjunto constituyen los daños sucesivos presentes en dichos ejemplos constituye una unidad jurídica de 'daño' que origina la correspondiente causa de acción resarcitoria. *Santiago v. Ríos Alonso, supra, pág. 191.*

Por otro lado, *HN1*[⬆] los *daños continuados* son

aqu[e]llos producidos por uno o más actos culposos o negligentes imputables al actor, coetáneos o no, que resultan en consecuencias lesivas ininterrumpidas, sostenidas, duraderas sin interrupción, unidas entre sí, las cuales al ser conocidas hacen que también se conozca — por ser previsible — el carácter continuado e ininterrumpido de sus efectos, convirtiéndose en ese momento en un daño cierto compuesto por elementos de daño actual (aquel que ya ha acaecido) y de daño futuro previsible y por tanto cierto. *Rivera Prudencio v. Mun. San Juan, supra, pág. 167.*

Como vemos, *HN2*[⬆] la diferencia entre ambos tipos de daños es que en los sucesivos, cada lesión a causa de un acto u omisión culposa o negligente produce un daño distinto, que a su vez, genera una causa de acción independiente, mientras en que en los continuados se genera una sola causa de acción que comprende todos los daños ciertos, tanto los actuales como los **previsibles** en el futuro, como consecuencia de una conducta torticera continua. Esa diferencia [**9] implica que en estos dos escenarios el término prescriptivo para presentar una reclamación de indemnización comienza a transcurrir en momentos distintos.

Conviene aclarar que aunque tradicionalmente nos referimos a las doctrinas bajo estudio como "daños continuos" o "daños sucesivos", lo que en realidad es continuo o sucesivo en estos escenarios es el acto u omisión que produce el daño y no, necesariamente, la lesión sufrida. Respecto a los daños continuados, así lo advertimos hace más de sesenta años cuando expusimos que la esencia de esa doctrina "no descansa [*418] en la naturaleza [...] del perjuicio ocasionado

por la perturbación, y sí en el carácter continuo o progresivo de **la causa** [acto u omisión torticera] que lo origina, que renueva constantemente la acción dañosa". (Énfasis suplido) *Arcelay v. Sánchez Martínez, 77 P.R.R. 782, 77 D.P.R. 824, 838 (1955)*. Por eso, entendemos que una clasificación más precisa es "daños y perjuicios causados por actos [u omisiones] continuos". *Capella v. Carreras, 57 P.R.R. 250, 57 DPR 258, 266 (1940)*. De esta forma, evitamos la confusión que genera la traducción del inglés al español del término *tort* como daño o daños. Adviértase que cuando esa palabra se utiliza en plural describe el área del Derecho que estudia la responsabilidad civil extracontractual, pero a la misma vez [**10] puede utilizarse en sustitución de los términos *perjuicios* o *lesiones*.

Nuestros pronunciamientos previos sobre este asunto, particularmente en lo referente a los llamados *daños continuados*, han sido imprecisos, pues hemos aplicado normas contradictorias entre sí. Eso ha llevado a una confusión doctrinal. Véanse J.J. Álvarez González, Análisis del Término 2006-2007 - Responsabilidad civil extracontractual, 77 Rev. Jur. UPR 603, 617-619 (2008) y J.J. Álvarez González, Análisis del Término 2001-02 - Responsabilidad civil extracontractual, *72 Rev. Jur. UPR 615, 638-642 (2003)*. Por lo tanto, resulta necesario clarificar la regla que rige en nuestro ordenamiento en estos casos.

Hace más de setenta años, en *Capella v. Carreras, supra*, un caso sobre un estorbo,[1] establecimos que los "daños y perjuicios causados por actos continuos [...] están latentes hasta que cesa la causa que los genera. Bien puede decirse que en tal caso la acción dañosa se renueva [*419] de día en día, de hora en hora, de minuto en minuto, de segundo en segundo." Consecuentemente, concluimos que la demanda no estaba prescrita debido a que al momento de reclamarse la indemnización, la perturbación continuaba vigente. Posteriormente, en *Arcelay v. Sánchez Martínez, 77 P.R.R. 782, 77 D.P.R. 824 (1955)*, donde los daños eran producto de ruidos y hedores que producía constantemente una

---

[1] En los casos de estorbos públicos, el Art. 277 del Código de Enjuiciamiento Civil, *32 LPRA sec. 2761*, crea una causa de acción para que una persona pueda solicitar que estos cesen y que se le indemnice por los perjuicios que le crearon. A pesar de esto, en lo que respecta a la indemnización, nuestro análisis en este tipo de casos se ha centrado en el Art. 1803 del Código Civil de 1902, o su equivalente actual, el Art. 1802 del Código Civil de 1930, *31 LPRA sec. 5141*.

planta **[\*\*11]** pasteurizadora, reiteramos la norma precitada. De esa manera, enunciamos que esa regla "no descansa en la naturaleza intrínseca del perjuicio ocasionado por la perturbación, y sí en el carácter continuo o progresivo de la causa que lo origina, que renueva constantemente la acción dañosa". *Íd., pág. 839.* Además, indicamos que esa norma no solo aplicaba cuando se reclamara indemnización por los daños causados a la propiedad del demandante, sino que aplicaba también a los escenarios donde se reclama por los daños y perjuicios personales. También validamos que el demandante enmendara su demanda para reclamar indemnización por los perjuicios causados hasta el momento del juicio debido a que estos continuaron después de que se presentó la demanda. *Íd., págs. 846-848.* Justificamos nuestro proceder al expresar que de esa forma se evitaba la "multiplicidad de acciones, siempre que el mal que produzca los daños sea de carácter continuo, y que los perjuicios subsiguientes sean similares a los que dieron lugar a la reclamación original". *Íd., pág. 847.* De igual modo, en *Seda et al. v. Miranda Hnos.& Co., 88 P.R.R. 344, 88 DPR 355 (1963),* ratificamos esta misma norma y expresamos que se podía recobrar por los daños y perjuicios "por todo el tiempo de la duración **[\*\*12]** del estorbo". *Íd., pág. 361.* Hasta ese momento nuestra doctrina sobre este asunto no causó mayores confusiones. El desfase que hoy atendemos comenzó décadas después, cuando este Tribunal se enfrentó a casos donde los daños no eran ocasionados propiamente por estorbos.

En *Galib Frangie v. El Vocero de P.R., supra, pág. 575,* un caso en el que aunque no se encontraban ante nuestra **[\*420]** consideración *daños continuados,* sino *daños sucesivos* producidos por la publicación de una serie de artículos libelosos, establecimos que al momento de determinar cuándo inicia el término prescriptivo en estos escenarios "Lo determinante es el momento *cuando comienza* la producción de los daños, que deberá tomarse en consideración como el inicio del término de prescripción, al presuponer que los perjudicados los conocían desde **[\*\*13]** entonces y que pudieran ejercitar la causa de acción". (Énfasis en original). A pesar de que esas expresiones constituyen *obiter dicta,* se repitieron en nuestra jurisprudencia y crearon la confusión doctrinal que hoy abordamos. Véanse J.J. Álvarez González, Análisis del Término 2001-02 - Responsabilidad civil extracontractual, supra, pág. 640, n. 83; Ruth E. Ortega-Vélez, Jurisprudencia Responsabilidad Civil Extracontractual, 2da Ed. Rev., Ediciones Scisco, 2009, pág. 138.

Poco tiempo después, en *Sánchez et al. v. A.E.E., 142 D.P.R. 880, 1997 Juris P.R. 45 (1997),* una Sentencia breve, varios jueces emitieron Opiniones concurrentes y disidentes en donde abordaron, de forma directa o indirecta, este mismo asunto. El entonces Juez Asociado señor Hernández Denton expuso lo siguiente: "La jurisprudencia española moderna ha declarado con carácter general que en caso de daños continuados el cómputo del plazo de prescripción comienza en el momento de la producción del resultado definitivo". (Citas omitidas). *Íd., pág. 921* (Opinión disidente del Juez Asociado señor Hernández Denton). Igualmente, la entonces Jueza Asociada señora Naveira de Rodón abordó indirectamente este punto al expresar que "[e]l término prescriptivo en acciones por la creación de un ambiente **[\*\*14]** hostil de trabajo debe comenzar a decursar desde que **cese** dicho ambiente. Esta norma reconoce que el término prescriptivo [...] debe comenzar a decursar **cuando se disipan** las circunstancias que podrían entorpecer el ejercicio de la acción". (Énfasis suplido). **[\*421]** *Íd., pág. 913* (Opinión disidente de la Jueza Asociada señora Naveira de Rodón).

Luego, en *Santiago v. Ríos Alonso, supra, pág. 195,* determinamos que ante un patrón de maltrato físico y emocional, "el último incidente de maltrato, cuando la víctima rompe con el ciclo de maltrato y reconoce que ha sufrido un daño cierto, es el que activa la causa de acción y, en consecuencia, constituye el momento a partir del cual puede ejecutarse la misma". (Énfasis suprimido). No obstante, para justificar ese resultado, citamos el caso de *Galib Frangie v. El Vocero de P.R., supra.*

Subsiguientemente, en *Nazario v. ELA, 2003 TSPR 116, 159 DPR 799, 807, 2003 Juris P.R. 116 (2003),* una Sentencia publicada, aplicamos nuevamente la norma de *Galib Frangie v. El Vocero de P.R., supra,* e indicamos que en los casos de *daños continuados* "lo determinante para establecer el inicio del término prescriptivo [...] es el momento en que *comienza* la producción del daño". (Énfasis original). Razonamos que esto se debía a que "al ser previsibles, se entiende que el término prescriptivo comienza a transcurrir cuando el perjudicado conoce, por primera vez, **[\*\*15]** el daño y el responsable de éste y que dicho daño comprende todas sus consecuencias como posibles de prever." *Nazario v. ELA, supra, pág. 807.* Además de que esos pronunciamientos fueron en una Sentencia, la cual no establece precedente, también es importante mencionar que en ese caso la mayoría del Tribunal determinó finalmente que la controversia ante su consideración se trataba de *daños sucesivos* y *no*

*continuados*, por lo que no aplicó la precitada norma. Sin embargo, el Juez Asociado señor Corrada Del Río emitió una Opinión disidente, pues entendió que los daños en cuestión eran continuados. Allí, luego de hacer un repaso de las distintas normas sobre prescripción en este tipo de casos, sugirió que en nuestro ordenamiento se aplicara la norma que computa el término prescriptivo a partir del **[*422]** momento en que finaliza la causa que genera los daños. *Nazario v. ELA, supra, págs. 828-829* (Opinión disidente del Juez Asociado señor Corrada del Río) ("Entendemos que por estar los daños continuados inexorablemente atados a la causa que la origina, el conocimiento definitivo de los quebrantos ocasionados se verifica el día que cesa la fuente de éstos, ya que mientras ésta exista, y por ende sean previsibles más daños relacionados a ella, **[**16]** no cabe hablar de resultado definitivo"). (Énfasis suprimido).

Posteriormente, en *Rivera Prudencio v. Mun. San Juan, supra, pág. 167*, dispusimos que "el plazo prescriptivo para reclamar por daños de naturaleza continua comienza a transcurrir cuando se verifica el **último de los actos o se produzca el resultado definitivo**". (Énfasis suplido). Sin embargo, al igual que en el caso anterior, finalmente concluimos que los daños en cuestión eran sucesivos, así que no aplicamos esta norma, por lo que esos pronunciamientos sobre el tema que hoy atendemos constituyen *obiter dicta*. Luego, en *Umpierre Biascoechea v. Banco Popular, 2007 TSPR 21, 170 DPR 205, 2007 Juris P.R. 26 (2007)*, (Sentencia), la Juez Asociada señora Rodríguez Rodríguez emitió una Opinión de conformidad en la que expuso que, conforme a la doctrina civilista moderna, "el inicio del plazo prescriptivo para reclamar por [...] [daños continuados] comienza en *el momento de la producción del resultado definitivo o hasta que se verifique el último de los actos*". (Énfasis en el original). *Íd., págs. 215-219*. Igualmente, la entonces Jueza Asociada señora Fiol Matta emitió una Opinión disidente en la que coincidió, en cuanto a este punto, con lo expresado por la Juez Asociada señora Rodríguez Rodríguez. *Íd., págs. 230-231*

Como vemos, nuestra jurisprudencia es inconstante **[**17]** en cuanto a cuándo comienza a transcurrir el término prescriptivo en casos de daños y perjuicios causados por actos u omisiones continuas. Una de las razones para estas contradicciones es la tensión aparente entre la teoría cognoscitiva del daño que rige en nuestro ordenamiento y la corriente doctrinal que postula que el término prescriptivo **[*423]** en estos casos comienza a transcurrir cuando se

produce el resultado definitivo. Esto se debe a que, en la mayoría de los casos, el reclamante conoce que está sufriendo un daño desde que comienzan los actos u omisiones culposas o negligentes continuos y no desde que se produce el resultado final. H. Brau del Toro, Los daños y perjuicios extracontractuales en Puerto Rico, 2da ed., San Juan, Pubs. JTS, 1986, Vol. II, Cap. X, pág. 582. Esto nos llevó a forzar excepciones a la norma con tal de procurar resultados justos de acuerdo a los hechos de los casos. Así, vemos que en los casos donde se buscaba disuadir los estorbos y combatir la violencia doméstica, concluimos que el término prescriptivo comenzaba a transcurrir con el resultado definitivo o el último acto u omisión torticera, mientras que ante otros hechos, resolvimos lo contrario.

Otra de las **[**18]** razones por las cuales existen incongruencias en la doctrina es que nuestros casos se han basado en autoridades de otras jurisdicciones que con el paso del tiempo han cambiado su postura. Por ejemplo, los precedentes de mediados del siglo pasado estaban anclados, en gran medida, en fuentes del *common law* estadounidense, mientras que los casos más recientes citan con aprobación a tratadistas civilistas, que a su vez, comentan la jurisprudencia española. Esta última también ha variado en tiempos recientes. Por ello, además de repasar nuestros pronunciamientos previos sobre este asunto, entendemos que es importante examinar el tratamiento que otras jurisdicciones le han brindado a la controversia ante nuestra consideración.

Sobre este particular, el tratadista Puig Brutau comenta que "[a]lgunas sentencias [españolas] han estimado que el año de plazo para recurrir ha de contarse, no en el momento de cesar el daño, sino desde que empieza a producirse, pues desde que se tuvo conocimiento del mismo se pudo ejercitar la acción. Sin embargo, en otros casos la jurisprudencia se ha inclinado claramente a favor de la **[*424]** otra posibilidad". J. Puig Brutau, Caducidad, prescripción extintiva y usucapión, 3ra ed., **[**19]** Barcelona, Ed. Bosh, 1996, pág. 77 citando a Díez-Picazo, La prescripción en el Código Civil, Barcelona, 1964 pág. 240. Véase, además, Reglero Campos en Albaladejo y Díaz Alabar, Comentarios al código Civil y Compilaciones Forales, Madrid, Ed. EDERSA, 1994, Tomo XXV, Vol. 2, págs. 454-464.

Por un lado, la vertiente más estricta de la doctrina tiene su origen en varias sentencias que el Tribunal Supremo español emitió a principios del siglo pasado que partían "del momento de comienzo de producción de los daños como iniciador de la prescripción, presuponiendo que

los perjudicados los conocían desde entonces y que pudieron sin obstáculo alguno ejercitar la pertinente acción". J. Santos Briz, La responsabilidad civil, 7ma ed., Madrid, Ed. Montecorvo, 1993, pág. 1187. Por otro lado, la segunda vertiente la encontramos en la doctrina española moderna que exhibe "una tendencia más elástica al situar el comienzo de la prescripción no en el inicio de los daños, sino **al realizarse su verificación total**". (Énfasis suplido) Íd., pág. 1188. En esta misma línea, "la jurisprudencia ha cambiado radicalmente el rumbo seguido por la que era dominante hasta la década de los sesenta [...], señalando que en los **[**20]** casos de daños continuados, el *dies a quo* del plazo de la prescripción no ha de remitirse a la fecha de la ocurrencia del accidente, sino al momento en que el perjudicado conoce de modo cierto los quebrantos definitivamente ocasionados." Albaladejo y Díaz Alabar, op. cit., págs. 460-461. Véase, además, I. Sierra Gil de la Cuesta, Comentario del Código Civil, Ed. Bosch, 2000, T.9, pág. 554. Como resultado, el Tribunal Supremo de España ha expuesto en casos recientes que "es consolidada doctrina jurisprudencial la que refiere el comienzo del cómputo de la prescripción en este tipo de casos cuando se trata de daños continuados [...] a aquel en que se produce el **resultado definitivo**." (Énfasis suplido) Díez-Picazo **[*425]** y Ponce de León, La prescripción extintiva en el Código Civil y en la jurisprudencia del Tribunal Supremo, Ed. Aranzadi, 2da ed., 2007, pág. 253. Es decir, "el cómputo del plazo de prescripción no se inicia **hasta la producción del definitivo resultado**, cuando no es posible fraccionar en etapas diferentes o hechos diferenciados la serie proseguida." (Énfasis suplido) Íd., pág. 1003.

Los tratadistas españoles añaden que no siempre resulta fácil "determinar [...] cuándo se produce **[**21]** o ha producido ese 'definitivo resultado' [puesto] que en relación con el concepto de daños continuados se nos ofrece como algo vivo, latente y conectado precisamente a la causa originadora y determinante de los mismos, que subsiste y se mantiene hasta su adecuada corrección". Albaladejo y Díaz Alabar, op. cit., pág. 460. Ahora bien, el entendido en la doctrina española moderna identifica ese momento cuando "el perjudicado conoce de modo cierto los **quebrantos definitivamente ocasionados**". (Énfasis suplido) Díez-Picazo y Ponce de León, op cit., pág. 1003. Esto es, cuando la conducta culposa o negligente ha dejado de causar los daños por los que se reclama indemnización.

Por otra parte, la mayoría de los estados de la Unión siguen una norma similar a la del derecho civilista

español respecto a este asunto. "The continuing tort doctrine constitutes an established exception to the usual rule that a statute of limitations starts to run at the time of injury. In those cases [...] the statute does not begin to run [...] until the negligent or other wrongful act or incident has terminated." Speiser, et als., The American Law of Torts, West Group, 2013, Vol. 1A, sec. 5:27, págs. 347-353. Esta doctrina, **[**22]** en ocasiones conocida como "continuing tort doctrine" y en otras como "continuing violation doctrine", se ha aplicado a casos de responsabilidad civil extracontractual por maltrato emocional, estorbos, impericia profesional, controversias sobre seguros, discrimen, intrusiones y explosiones, entre otros. Íd. Véase, además, Elad Peled, Rethinking the Continuing Violation **[*426]** Doctrine: The Application of Statutes of Limitations to Continuing Tort Claims, *41 Ohio N.U.L. Rev. 343 (2015)*.

B. Luego de examinar nuestra jurisprudencia, los precedentes modernos en otras jurisdicciones que nos resultan altamente persuasivos, así como los comentarios recientes de distintos tratadistas, entendemos que lo más adecuado es uniformar nuestra doctrina en aras de darle certeza a nuestro ordenamiento. De esta forma, *HN3*↰] **resolvemos que ante daños y perjuicios causados por cualquier acto u omisión culposo o negligente de carácter continuado, el término prescriptivo para incoar una acción para solicitar resarcimiento comienza a transcurrir cuando se verifiquen los últimos actos u omisiones o se produzca el resultado definitivo, lo que sea posterior**. Esta norma no es incompatible con la teoría cognoscitiva del daño que rige en nuestro ordenamiento. **[**23]** "Por estar los daños continuados inexorablemente atados a la causa que los origina, el conocimiento definitivo de los quebrantos ocasionados se verifica el día que cesa la fuente de éstos, ya que mientras exista, y por ende sean previsibles más daños relacionados a ella, no cabe hablar de resultado definitivo". *Nazario v. ELA, supra, pág. 828* (Opinión disidente del Juez Asociado señor Corrada del Río).[2]

---

[2] Conviene recalcar que en ocasiones, como en este caso, las opiniones disidentes del pasado encuentran eco en el presente y se convierten en precedentes de cara al futuro. "A dissent in a court of last resort is an appeal to [...] the intelligence of a future day, when a later decision may possibly correct the error into which the dissenting judge believes the court to have been betrayed." Charles Evans Hughes, The Supreme Court of the United States 68 (1936). El hecho de que una postura no consiga la mayoría de los votos en un momento dado no significa, necesariamente, que es errónea.

Naturalmente, esto no excluye que un demandante pueda probar, **[\*427]** además, que conoció el daño sufrido en un momento distinto al que cesó la causa que lo generó.

No encontramos razón para no modernizar nuestra doctrina al igual que ha sucedido en otras jurisdicciones. Tampoco hallamos una justificación válida para tratar de forma distinta los casos en donde los daños no son producidos *estrictamente* por estorbos o actos de violencia doméstica. Independientemente de la naturaleza o el tipo de acto u omisión que genere el daño, en el contexto de *daños continuados*, el perjudicado se encuentra sufriendo un perjuicio que no ha de cesar, y por el contrario, se ha de repetir hasta que la causa generadora deje de existir. Por lo tanto, la norma que anunciamos hoy es aplicable a *todos* los casos sobre daños y perjuicios producidos por actos u omisiones continuados.

Tampoco nos persuaden las propuestas alternas que al momento de determinar **[\*\*25]** cuándo comienza a transcurrir un plazo prescriptivo, por ejemplo, obligan a los tribunales a analizar si a pesar de reclamarse por daños continuados los perjuicios por los que se reclama indemnización tienen suficiente sustantividad y autonomía propia, o si por el contrario, el daño por el que se reclama es de carácter unitario y sin sustantividad propia. Laracruz Berdejo y otros, Elementos de Derecho Civil II, 5ta Ed., Madrid, Ed. Dykinson, 2013, T. II, Vol. 2, pág. 492. Igualmente, no nos convence la propuesta del profesor Brau del Toro respecto a que debe existir una distinción en el tratamiento brindado a los estorbos permanentes y a los estorbos continuos para fines de prescripción. H. Brau del Toro, op. cit., págs. 582-583. Estas alternativas, aunque pueden tener su mérito, desnaturalizan la esencia de los daños continuados, crean una nueva submodalidad de estos y a su vez, la equiparan a los daños sucesivos para fines de prescripción. La doctrina que hoy incorporamos definitivamente a nuestro ordenamiento nos parece más apropiada.

Simplemente no persuadió a la mayoría de los jueces que componían el Tribunal **[\*\*24]** Supremo en un momento dado. Después de todo, este Tribunal no es *supremo* porque es infalible; solo es supremo en jerarquía. Por esta razón, al reexaminar nuestra jurisprudencia, en esta ocasión nos persuaden los planteamientos previos de varios jueces y juezas de este Tribunal, quienes desde sus respectivas Opiniones de conformidad, concurrentes o disidentes, abordaron la cuestión que hoy resolvemos de manera definitiva.

**[\*428]** Lo contrario implica fraccionar innecesariamente las causas de acción, pues obligaríamos a los perjudicados a presentar sus demandas desde que se inician **[\*\*26]** los daños, incluso cuando la fuente que los genera no ha cesado y, por el contrario, continúa y continuará causando perjuicios adicionales. Esto provoca litigios excesivamente extensos, pues los demandantes tienen que enmendar constantemente sus demandas para incluir alegaciones y reclamos por daños sufridos, aunque por la misma causa, con posterioridad a la presentación de la demanda original. "En este contexto, el balance de los intereses involucrados en los términos prescriptivos se inclina en favor de los demandantes, pues la desestimación de su causa de acción los expondría a un [acto u omisión culposo o negligente], que, en teoría, podría continuar indefinidamente" (traducción nuestra) Peled, op cit., pág. 348, citando a Tyler T. Ochoa & Andrew J. Wistrich, The Puzzling Purposes of Statutes of Limitations, 28 PAC. L.J., 453, 505 (1997).

A diferencia de lo que podría intimarse, esta norma no fomenta que los demandantes se crucen de brazos, más bien, desincentiva que las personas actúen de forma culposa o negligente continuamente. De esta forma, no penalizamos a un demandante que presenta su reclamación cuando todavía no ha transcurrido un año desde que cesó la <u>causa</u> que generaba los daños por los que solicita indemnización. Recuérdese que el foco de análisis **[\*\*27]** en la doctrina ante nuestra consideración es la omisión o el acto continuo y no propiamente los daños sufridos. *Arcelay v. Sánchez, supra, pág. 838*. Si en nuestro ordenamiento se reconoce la interrupción y el comienzo de un nuevo término prescriptivo mediante actos extrajudiciales, también debemos reconocer que el término prescriptivo no comienza cuando la causa generadora del daño no ha cesado. En ese sentido, en ambos escenarios se preserva el derecho de los perjudicados a reclamar indemnización por los daños que sufrieron.

**[\*429]** Por otra parte, constantemente enfatizamos el valor del precedente en nuestro ordenamiento. No obstante, nuestras decisiones no son un dogma escrito en piedra. Por eso, "cuando el razonamiento de una decisión ya no resiste un análisis cuidadoso, no estamos obligadas a seguirla". *Fraguada Bonilla v. Hosp. Aux. Mutuo, supra, pág. 391*. "[E]l propósito inspirador de la doctrina de *stare decisis* es lograr estabilidad y certidumbre en la ley, mas nunca perpetuar errores". *Am. Railroad Co. of P.R. v. Comisión Industrial, 61 D.P.R. 324, 326 (1943)*. Ahora

bien, solo procederá dejar a un lado precedentes: "(1) si la decisión anterior era claramente errónea; (2) si sus efectos sobre el resto del ordenamiento son adversos, y (3) si la cantidad de personas que confiaron en ésta es limitada". *Pueblo v. Delgado, 2008 TSPR 174, 175 DPR 1, nota 8 (2008)*; *González Natal v. Merck Sharp & Dohme Química de Puerto Rico, Inc., 2006 TSPR 2, 166 D.P.R. 659, 688, 2006 Juris P.R. 10 (2006)*.

A la luz de todo **[\*\*28]** lo anterior y debido a la confusión que ha causado en nuestra doctrina, dejamos sin efecto nuestros pronunciamientos previos en contrario a esta Opinión, en particular, los expuestos en *Galib Frangie v. El Vocero de P.R., supra*, y su progenie, **en cuanto a este asunto particular**. Con ello, sacamos esa espina de nuestra jurisprudencia y eliminamos las dolencias que esta le causa a nuestra doctrina de daños y perjuicios.

III

En este caso, tanto el Municipio como los recurridos están de acuerdo con las determinaciones de los foros recurridos de que la causa que genera los daños por los que se reclama es de carácter continua. Los daños son el resultado de las inundaciones producidas como consecuencia de los defectos de las alcantarillas de la calle donde viven los recurridos. La única discrepancia es cómo debe computarse el término prescriptivo, pues los recurridos admitieron en varias deposiciones que conocían de la recurrencia de las inundaciones desde hacía muchos años.

**[\*430]** Al analizar esos hechos a la luz de la norma discutida, concluimos que la demanda de epígrafe **no está prescrita**, puesto que no se han verificado los últimos actos u omisiones ni se ha producido el resultado definitivo. Más bien, nos encontramos ante una causa de **[\*\*29]** acción que se regenera día a día mientras subsista la falta de mantenimiento de las alcantarillas y tuberías. Eso causa inundaciones recurrentes y previsibles.

IV

Por los fundamentos antes expuestos, confirmamos la determinación del Tribunal de Apelaciones. En consecuencia, se devuelve el caso al Tribunal de Primera Instancia, Sala Superior de Ponce, para que continúen los procedimientos.

Rafael L. Martínez Torres

Juez Asociado

SENTENCIA

En San Juan, Puerto Rico, a 14 de septiembre de 2016.

Por los fundamentos antes expuestos, en la Opinión que antecede, la cual se hace formar parte integrante de la presente Sentencia, confirmamos la determinación del Tribunal de Apelaciones. En consecuencia, se devuelve el caso al Tribunal de Primera Instancia, Sala Superior de Ponce, para que continúen los procedimientos.

Lo acordó el Tribunal y lo certifica el Secretario del Tribunal Supremo. La Juez Asociada señora Rodríguez Rodríguez está conforme con la determinación de este Tribunal y hace constar la siguiente expresión: "Me place consignar mi conformidad con la opinión que hoy emite una mayoría de este Foro. Como bien subraya la opinión mayoritaria, 'este Tribunal no es *supremo* porque es infalible, **[\*\*30]** solo es supremo en jerarquía'. *Carlos J. Rivera Ruiz, et al. v. Municipio Autónomo de Ponce, et al., 2016 TSPR 197, en la nota 2, 19 D.P.R. (2016)*.

El trayecto de la doctrina de los daños continuados en nuestra jurisprudencia ha sido uno extenso. A pesar de ello, durante los últimos veinte años, el consenso respecto a la controversia puntual que hoy atendemos se podría describir como elusivo. Esto, a pesar de que, hace nueve años, intenté persuadir a una mayoría de este Tribunal de adoptar la normativa que hoy pautamos. Véase *Umpierre Biascoechea v. Banco Popular, 2007 TSPR 21, 170 D.P.R. 205, 2007 Juris P.R. 26 (2007)* (Rodríguez Rodríguez, Opinión de conformidad). Empero, fue preciso esperar.

La doctrina del precedente judicial guía el proceder de este Tribunal en aras de salvaguardar la uniformidad en la interpretación del Derecho y la ley. Ahora bien, no podemos descansar en este principio cuando la aplicación del mismo tiene el efecto de perpetuar una lectura errónea del Derecho. Véase *Pueblo v. Díaz de León, 2009 TSPR 142, 176 D.P.R. 913, 922 (2009)*; *Pueblo v. Pérez Pou, 2009 TSPR 5, 175 D.P.R. 218, 251-252 (2009)* (Rodríguez Rodríguez, Opinión disidente).

**[\*431]** En fin, estoy satisfecha con que, de forma definitiva, hayamos logrado armonizar la doctrina de los daños continuados con la figura de la prescripción extintiva. Así, proveemos a la teoría general del Derecho de Responsabilidad Civil Extracontractual una mayor estabilidad".

Juan Ernesto Dávila Rivera

Secretario del Tribunal Supremo

**End of Document**