**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

|  |  |
|---|---|
| JEANETTE PEREZ MACEIRA *et al.*, individually, and on behalf of all others similarly situated,<br><br>     Plaintiffs,<br><br>  v.<br><br>CUSTOMED, INC., *et al.*,<br><br>     Defendants. | Case No. 3:23-cv-01445-CVR |

**MOVING DEFENDANTS' MOTION TO STRIKE CLASS ALLEGATIONS PURSUANT
TO FED. R. CIV. P. 23(d)(1)(D)**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ..................................................................................................................... 1

BACKGROUND ..................................................................................................................... 4

ARGUMENT .......................................................................................................................... 7

I.      THE CLASS CONSISTS OF PEOPLE WHO HAVE NOT SUFFERED INJURY, IN VIOLATION OF PUERTO RICO'S ACTUAL INJURY REQUIREMENT. ........................................................................................................ 8

II.     PLAINTIFFS (AND PUTATIVE CLASS MEMBERS) ARE LIMITED TO PERSONAL INJURY CLAIMS UNDER PUERTO RICO LAW, AND PERSONAL INJURY CLAIMS ARE NOT SUITABLE FOR CLASS CERTIFICATION. .................................................................................................. 9

III.    THE STRUCTURAL MISMATCH BETWEEN PLAINTIFFS' PRESENT-PHYSICAL INJURY CLAIMS AND AN EXPOSURE-ONLY CLASS MEANS PLAINTIFFS FAIL BOTH ADEQUACY AND TYPICALITY UNDER RULE 23(A). ............................................................................................................... 14

        A.    Plaintiffs' Claims Are Atypical Of The Class. ...................................... 14

        B.    Plaintiffs Are Inadequate Class Representatives. ................................. 16

CONCLUSION ..................................................................................................................... 19

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ............................................................................................... *passim*

*Andrews v. Bechtel Power Corp.*,
780 F.2d 124 (1st Cir. 1985) .............................................................................................16

*Ball v. Union Carbide Corp.*,
385 F.3d 713 (6th Cir. 2004) ............................................................................................15

*Barraza v. C. R. Bard Inc.*,
322 F.R.D. 369 (D. Ariz. 2017) ........................................................................................15

*Cintrón Adorno v. Gómez*,
147 D.P.R. 576, 589 (1999) ................................................................................... *passim*

*Collazo v. Calderon*,
212 F.R.D. 437 (D.P.R. 2002) ....................................................................................14, 16

*Com. of Puerto Rico v. M/V Emily S.*,
158 F.R.D. 9 (D.P.R. 1994) ...............................................................................11, 12, 13, 15

*Cook Cnty. College Teachers Union, Local 1600 v. Byrd*,
456 F.2d 882 (7th Cir. 1972) ..............................................................................................7

*Díaz Ramos v. Hyundai Motor Co.*,
431 F. Supp. 2d 209 (D.P.R. 2006) .....................................................................................8

*Garcia-Rubiera v. Calderon*,
570 F.3d 443 (1st Cir. 2009) ...............................................................................................7

*Gen. Tel. Co. v. Falcon*,
457 U.S. 147 (1982) ............................................................................................................7

*Hansberry v. Lee*,
311 U.S. 32 (1940) ............................................................................................................18

*In re Puerto Rican Cabotage Antitrust Litig.*,
269 F.R.D. 125 (D.P.R. 2010) ................................................................................13, 14, 16

i

*In re St. Jude Med., Inc.*,
    425 F.3d 1116 (8th Cir. 2005) ........................................................................................15

*Kohen v. Pacific Inv. Mgmt. Co. LLC*,
    571 F.3d 672 (7th Cir. 2009) ......................................................................................9, 18

*Manning v. Boston Med. Ctr. Corp.*,
    725 F.3d 34 (1st Cir. 2013).................................................................................................7

*Mod. Holdings, LLC v. Corning, Inc.*,
    2018 WL 1546355 (E.D. Ky. Mar. 29, 2018).....................................................................15

*Paternostro v. Choice Hotel Int'l Servs. Corp.*,
    309 F.R.D. 397 (E.D. La. 2015).........................................................................................18

*Pilgrim v. Univ. Health Card*,
    660 F.3d 943 (6th Cir. 2011) ..............................................................................................7

*Reid v. Donelan*,
    17 F.4th 1 (1st Cir. 2021)...................................................................................................18

*Sagar v. Kelly Auto. Grp., Inc.*,
    2021 WL 5567408 (D. Mass. 2021) ....................................................................................7

*Tyson Foods Inc. v. Bouaphakeo*,
    577 U.S. 442 (2016)...........................................................................................................10

*Vinole v. Countrywide Home Loans, Inc.*,
    571 F.3d 935 (9th Cir. 2009) ..............................................................................................7

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)................................................................................................7, 14, 18

*Waste Mgmt. Holdings, Inc. v. Mowbray*,
    208 F.3d 288 (1st Cir. 2000)........................................................................................12, 13

**OTHER AUTHORITIES**

7AA Charles Allen Wright et al., *Federal Practice and Procedure* § 1785 ...................................7

Fed. R. Civ. P. 23................................................................................................................ *passim*

TO THE HONORABLE COURT:

Medtronic Puerto Rico Operations Co., Customed, Inc., and Steri-Tech, Inc. (collectively, "Moving Defendants") respectfully move, pursuant to Federal Rules of Civil Procedure 23(c)(1) and 23(d)(1)(D), for an order striking the class allegations from Plaintiffs' Corrected Amended Complaint, ECF No. 74 (the "Amended Complaint" or "Am. Compl."). The Amended Complaint, read in conjunction with this Court's motion-to-dismiss ruling (Opinion and Order, ECF No. 123 ("MTD Op.")), makes clear as a matter of law that the proposed class cannot be certified. For fairness and efficiency, to avoid the unnecessary expense of class discovery, and to comply with Rule 23's direction to decide class certification at an "early practicable time," Fed. R. Civ. P. 23(c)(1)(A), the Court should strike the class allegations pursuant to Rule 23(d)(1)(D).

## INTRODUCTION

The remaining plaintiffs in this matter—Jeanette Pérez-Maceira, José Luis Mateo-Pérez, Lilliam Ortiz, Danisha Ortiz-Santiago, Yamel Santiago-Rivera, Elba Meléndez-Figueroa, Lianibel Colón-Sánchez, Idalia Vargas-Gratacós, and Juana Castro-Moreno ("Plaintiffs")—allege that they developed various medical conditions following alleged ethylene oxide ("EtO") exposure. Am. Compl. ¶¶ 77-86. While the Court's motion-to-dismiss ruling allowed Plaintiffs' negligence and nuisance claims to proceed, it expressed skepticism that Plaintiffs would be able to prove these claims given "the remoteness of the injuries alleged"—various disease "diagnoses rang[ing] from 1994 all the way through 2022." MTD Op. 11 & n.8. But Plaintiffs do not want to litigate just their own personal-injury claims: they also want to represent a sprawling putative class defined to include every single person who has lived, worked, or attended school within four miles of one of three sterilization facilities, each operated by an unrelated Moving Defendant, which they estimate to be more than 40,000 people. Am. Compl. ¶¶ 96-97. They do *not* allege that this putative class suffered any present injury caused by EtO. Instead, the Amended Complaint asserts that mere

1

proximity to a sterilization facility "makes it significantly more likely" that *some* members of the putative class "will develop *future* injuries" at an unspecified time. *Id.* ¶ 107 (emphasis added). This leaves a case in which named plaintiffs who allege *manifested injuries* want to represent an exposure-only class with no injury requirement. That case is fundamentally unfit for class treatment, for three independent reasons.

*First*, the proposed class cannot be certified because it consists of individuals without a present injury under Puerto Rico law. This Court has already explained that Puerto Rico law requires that Plaintiffs—and thus *each* putative class member, were a class to be certified—allege and ultimately prove an actual, present physical injury. MTD Op. 10-11. And the Court ruled that these Plaintiffs pleaded such an injury because they alleged various diagnosed diseases supposedly caused by Defendants' actions. *Id.* at 11 & n.8. But a class consisting of individuals who merely lived, worked, or attended school within four miles of a sterilization facility is a class without actual, present physical injuries, and thus without claims under Puerto Rico law—even if it is taken as true (for purposes of this Motion only) that such proximity "makes it significantly more likely" that *some* "will develop *future* injuries." Am. Compl. ¶ 107 (emphasis added). That alone makes it impossible to certify the proposed class and requires that the Court strike the class allegations.

*Second*, even if the class definition required class members to establish actual injury and they could somehow do so, the Supreme Court has recognized that personal-injury cases are not suitable for class certification because individualized inquiries into injury, causation, and damages necessarily would predominate, rendering the class action an inferior method of adjudication. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 628 (1997). That guidance is dispositive here. Plaintiffs must establish actual injury, causation, and damages in order to prevail. MTD Op. 11. But no common proof can establish these elements across the class. Even accepting Plaintiffs'

2

allegations as true for purposes of this Motion, Plaintiffs and putative class members were supposedly exposed to EtO at varying levels, due to alleged EtO emissions at different times and in different places.[1]  All of those issues would bear on causation of any alleged physical injury, assuming any injury were even alleged.  And to make matters worse, Plaintiffs' and putative class members' medical histories, family medical histories, and social histories, all of which impact disease causation, would also differ widely.  These individualized issues and vast and critically relevant dissimilarities cause this proposed personal-injury class action to fail predominance and superiority on its face.

*Third*, even if personal-injury cases could be certified for class treatment (they cannot), this case presents a structural mismatch that independently defeats certification.  The divergence between Plaintiffs (who allege manifested physical injuries) and the proposed class (individuals merely exposed to EtO by proximity, who may never suffer any alleged EtO-related disease) creates conflicts and misaligned incentives that undermine both typicality and adequacy.  For one, presently injured members would seek (as Plaintiffs are seeking) immediate compensatory relief, while exposure-only members would rationally prioritize prospective monitoring or conserving resources for potential future claims.  For another, members with alleged EtO-related physical injuries must bring their claims now, whereas the putative class of exposure-only members, who

---

[1] Plaintiffs also allege exposure from different Defendants.  The overbreadth of the class definition is another obvious defect precluding certification.  Plaintiffs define the class to include "[a]ll individuals" who lived, worked, or attended school within four miles of any of the three facilities. Am. Compl. ¶ 96.  This Court has already held that a plaintiff's claims lie only against the facility near which that plaintiff lived, worked, or attended school.  *See* MTD Op. 5; ECF No. 104, 4.  For example, an individual that claims to have lived, worked, or attended school near Steri-Tech has no claim against Medtronic and vice versa.  The proposed class thus is overbroad as to each Defendant.  While Plaintiffs must cure that defect by amending the class definition, and thus it is not the crux of this Motion, it underscores that these Plaintiffs' cases should not be jointly litigated. At best, individual cases—and more precisely, individual personal injury cases—should proceed against individual defendants.  *See* Motion to Sever at 6.

do not have ripe claims under Puerto Rico law, can wait—that is, unless Plaintiffs get their way and a class is certified, thus binding the entire class to the result in Plaintiffs' case. Those fundamental differences and conflicts preclude Plaintiffs from fairly and adequately representing the proposed exposure-only class. *See Amchem*, 521 U.S. at 625-26.

Rule 23 empowers courts to address such defects at the earliest practicable time. Where, as here, it is apparent from the complaint that the proposed class cannot be certified, striking the class allegations avoids costly and needless class discovery, preserves judicial and party resources, and prudently narrows the case to include only individual personal-injury claims. Plaintiffs' class allegations are improper and should be stricken at the outset. *See* Fed. R. Civ. P. 23(d).[2]

## **BACKGROUND**

The Moving Defendants operate EtO sterilization facilities at distant locations from one another in Puerto Rico. Am. Compl. ¶¶ 21, 23, 25. In their Amended Complaint, Plaintiffs claim they developed myriad medical conditions following alleged EtO exposure from Moving Defendants' separate facilities. *Id.* ¶¶ 77-86. For example, Plaintiff Lilliam Ortiz—who lived in the vicinity of Steri-Tech in Salinas—alleges she was diagnosed with thyroid cancer in 2016. *Id.* ¶ 77; *see also id.* ¶¶ 78-84 (naming other Plaintiffs who live(d) in the vicinity of Steri-Tech and allege various medical conditions). Plaintiff Idalia Vargas-Gratacós—who lived in the vicinity of Medtronic in Villalba—alleges she was diagnosed with melanoma in 2013, and asthma, high blood

---

[2] The Moving Defendants anticipate that, if the case were to proceed to class discovery, further defects in the proposed class would come to light that would independently foreclose certification. The Moving Defendants expressly reserve the right to raise those objections at the appropriate time if necessary. That said, the threshold flaws identified in this Motion—apparent from the face of the Amended Complaint and this Court's motion-to-dismiss ruling—confirm that deferring a decision on class treatment would be futile, expensive, and unnecessary.

pressure, and arthritis in 2003. *Id.* ¶ 85. Plaintiff Juana Castro-Moreno—who lived in the vicinity of Customed in Fajardo—alleges she was diagnosed with breast cancer in 2012. *Id.* ¶ 86.

Notwithstanding these individualized allegations, Plaintiffs seek to represent a putative class defined to include *every single person* who has lived, worked, or attended school within four miles of one of the three sterilization facilities—each of which is distant from one another and operated by an unrelated Moving Defendant—"beginning the date of initial emissions of EtO from each facility." *Id.* ¶ 96. They estimate that class would exceed 40,000 individuals. *Id.* ¶ 97. The Amended Complaint does not allege that the proposed class, as a whole, has suffered any present physical injury caused by EtO. Instead, it asserts that EtO exposure "makes it significantly more *likely*" that *some* members of the putative class "*will develop future injuries*" at an unspecified time. *Id.* ¶ 107 (emphases added). Thus, the proposed class consists of no-physical-injury, exposure-only individuals, whereas Plaintiffs themselves allege manifested physical injuries.

In April 2024, Defendants moved to dismiss the Amended Complaint. ECF No. 76. As relevant here, the motion argued that all of Plaintiffs' claims fail because Puerto Rico law requires a present injury caused by EtO, *id.* at 11-13, and that Plaintiffs cannot circumvent that requirement by seeking medical-monitoring damages absent a current physical injury (*i.e.*, "no-injury medical monitoring"), *id.* at 13-17.

In May 2025, Magistrate Judge López-Soler issued a Report and Recommendation ("R&R") that recommended dismissal of nearly all of Plaintiffs' claims, including their gross-negligence claims, unjust-enrichment claims, and product-liability claims. ECF No. 104. Observing that the Amended Complaint "hinges on the alleged proximity of each individual plaintiff to EtO emissions," the R&R also concluded that "each plaintiff's claims are actionable only against the sterilization facility within four miles of his or her respective home, school, or

work." *Id.* at 4.  As to the remaining tort claims—*i.e.*, the negligence and nuisance claims—the R&R explained that under Puerto Rico law, "Plaintiffs are not entitled to compensation for potential or speculative injuries" and instead "need to establish an actual injury to be entitled to relief." *Id.* at 13-15.  The R&R ultimately declined to dismiss on the pleadings for lack of injury, finding that "Plaintiffs have sufficiently alleged that they have suffered injuries" in the form of disease diagnoses "*because of* EtO emissions from [the] Defendants' facilities." *Id.* at 15.

The District Court adopted the R&R in full, including its articulation of Puerto Rico's actual physical injury requirement.  MTD Op. 11.  As for whether Plaintiffs alleged actual injury, the Court found Plaintiffs' pleadings minimally sufficient, reading the Amended Complaint to claim that "the injuries alleged"—various disease "diagnoses rang[ing] from 1994 all the way through 2022"—were caused by EtO exposure.  *Id.* at 11 & n.8.  The Court, however, expressed skepticism that Plaintiffs could ultimately carry their burden "due to the remoteness of the injuries alleged" and emphasized that Puerto Rico law imposes a demanding burden of proof.  *Id.* at 11. To prevail on negligence, Plaintiffs must establish: "(1) evidence of physical or emotional injury, (2) a negligent or intentional act or omission (the breach of duty element), and (3) a sufficient causal nexus between the injury and defendant's act or omission (in other words, proximate cause)."  *Id.*  The same reasoning applies to the nuisance claims, which the Court explained "go hand in hand" with negligence.  *Id.* at 10.

In sum, only nuisance and negligence claims remain against the Moving Defendants.  To pursue those claims, the Court noted, Plaintiffs must allege actual physical injury caused by emissions from the Defendants' facilities.  MTD Op. 11.  The Court ruled that, having alleged their various disease diagnoses were caused by Moving Defendants' conduct, Plaintiffs met their pleading burden.  *Id.* at 10-11.  The question now is whether the Court should permit the Plaintiffs

6

to proceed with their class allegations, notwithstanding that they "seek injury compensation as well as medical monitoring costs," *see* Am. Compl. at 2, based on manifested diagnosed injuries, but want to represent a class of no-physical-injury, exposure-only individuals. The answer—for three independent reasons—is a clear "no."

## ARGUMENT

Class certification is the exception, not the rule. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011). "To obtain certification of a class, Plaintiffs must establish the prerequisites of Rule 23(a) and fall within one of the categories of Rule 23(b)." *Garcia-Rubiera v. Calderon*, 570 F.3d 443, 461 (1st Cir. 2009). Courts engage in a "rigorous analysis" of these questions, and a deficiency on either front dooms the class. *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982).

A court must determine whether class treatment is appropriate "[a]t an early practicable time." Fed. R. Civ. P. 23(c)(1)(A). "[N]othing in the rules says that the court must await a motion by the plaintiffs." *Pilgrim v. Univ. Health Card*, 660 F.3d 943, 949 (6th Cir. 2011); *accord* 7AA Charles Allen Wright et al., *Federal Practice and Procedure* § 1785; *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 941-44 (9th Cir. 2009); *Cook Cnty. College Teachers Union, Local 1600 v. Byrd*, 456 F.2d 882, 884-85 (7th Cir. 1972); *Sagar v. Kelly Auto. Grp., Inc.*, 2021 WL 5567408, at *6 (D. Mass. 2021). Rather, under Rule 23(d), pre-certification motions to strike class allegations should be granted where there is a "central defect" plain from the pleadings. *Pilgrim*, 660 F.3d at 949. Where "it is obvious from the pleadings" that the class "cannot possibly move forward," the Court may address the issue before discovery. *Manning v. Boston Med. Ctr. Corp.*, 725 F.3d 34, 59 (1st Cir. 2013).

The pleadings make clear that this Court must strike Plaintiffs' class allegations for three independent reasons. First, class certification would violate Puerto Rico's actual-injury requirement because the class as defined consists of people with potential and uncertain future

7

injuries. Second, even if the class definition were amended to require that individuals have an actual, physical injury, a personal-injury action cannot be certified under Rule 23(b) because individual questions predominate, making a class action an inferior method of adjudication. Finally, Plaintiffs fail their burden to establish adequacy and typicality under Rule 23(a) because they allege manifested physical injuries but want to represent an exposure-only class. The Court should strike Plaintiffs' allegations now to avert costly and burdensome class discovery that would be futile in light of these defects.

## I.    THE CLASS CONSISTS OF PEOPLE WHO HAVE NOT SUFFERED INJURY, IN VIOLATION OF PUERTO RICO'S ACTUAL INJURY REQUIREMENT.

Plaintiffs' proposed class fails at the outset because it violates Puerto Rico law. As this Court recently ruled, a plaintiff cannot recover in tort under Puerto Rico law absent an actual, present "physical or emotional" injury caused by the defendants' misconduct. MTD Op. 11; *see also Cintrón Adorno v. Gómez*, 147 D.P.R. 576, 589 (1999), certified translation attached at ECF No. 76-1 (collecting cases and reiterating that "*[i]n order for an injury to be redressed, the injury has to have truly been suffered and has to be proven*."). That is precisely right. The Puerto Rico general tort statute "does not provide for the compensation of potential future injuries, only injuries actually suffered." *Díaz Ramos v. Hyundai Motor Co.*, 431 F. Supp. 2d 209, 213 (D.P.R. 2006) (dismissing tort claim seeking damages for possible future injury because "[a] cause of action for tort damages . . . presupposes that the plaintiff has suffered an actual injury caused by defendant's fault or negligence") (citing *Admor F.S.E. v. Almacén Ramón Rosa*, 151 D.P.R. 711, 725 (2000)).

Plaintiffs' proposed class definition, however, encompasses tens of thousands of individuals with only potential and uncertain future injuries. Rather than tailoring the class to individuals with past or current injuries, Plaintiffs sweep in every single person who has lived, worked, or attended school within four miles of Moving Defendants' facilities. Am. Compl. ¶¶ 96-

8

97.  Flouting the actual, physical injury requirement altogether, Plaintiffs allege that EtO exposure "makes it significantly more *likely*" that *some* members of the putative class "*will develop future injuries*" at an unspecified time and of an unspecified nature and extent.  *Id.* ¶ 107 (emphases added).  Plaintiffs' class definition therefore instantly fails under Puerto Rico law, since alleging an actual injury and causation are prerequisites to pursuing tort claims.  MTD Op. 11; *Cintrón Adorno*, 147 D.P.R. at 589.  This deficiency alone requires the Court to strike the class irrespective of whether Plaintiffs meet their burden under Rules 23(a) and 23(b).  *See, e.g., Kohen v. Pacific Inv. Mgmt. Co. LLC*, 571 F.3d 672, 677 (7th Cir. 2009) (holding that "a class should not be certified if it is apparent that it contains a great many persons who have suffered no injury at the hands of the defendant").

## II.    PLAINTIFFS (AND PUTATIVE CLASS MEMBERS) ARE LIMITED TO PERSONAL INJURY CLAIMS UNDER PUERTO RICO LAW, AND PERSONAL INJURY CLAIMS ARE NOT SUITABLE FOR CLASS CERTIFICATION.

Even if class members somehow could each establish actual, physical injury, the proposed class fails for a separate reason:  The Supreme Court has recognized that personal-injury cases are rarely suitable for class certification because individualized inquiries into injury, causation, and damages necessarily predominate, rendering the class action an inferior method of adjudication.  *Amchem*, 521 U.S. at 624-25.  Here, Plaintiffs seek certification of a class of "[a]ll individuals who have resided, worked or attended daycare and/or school within a four-mile radius" of the Defendants' facilities, alleging negligence and nuisance based on increased EtO exposure above background levels that exist in the atmosphere.  Am. Compl. ¶ 96.  That class cannot possibly meet Rule 23(b)(3)'s requirements of common-issue predominance or class-action superiority.

Rule 23(b)(3) requires that common questions of law or fact "predominate over any questions affecting only individual members, and that a class action [be] superior to other available methods for fairly and efficiently adjudicating the controversy."  This inquiry "trains on the legal

9

or factual questions that qualify each class member's case as a genuine controversy," *Amchem*, 521 U.S. at 623, and asks "whether [the] proposed classes are sufficiently cohesive to warrant adjudication by representation," *Tyson Foods Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (quotations omitted).  Courts must "give careful scrutiny to the relation between common and individual questions in a case." *Id.*  Accordingly, the inquiry is "far more demanding" than Rule 23(a)(2)'s commonality requirement.  *Amchem*, 521 U.S. at 624.

It is well settled that personal-injury classes arising from alleged toxic emissions almost never satisfy predominance or superiority because liability and damages turn on unique exposure histories, disease-specific causation, and individualized damages.  The Supreme Court's decision in *Amchem Products v. Windsor* underscores the point.  There, the Court addressed a proposed nationwide settlement class to resolve claims arising from exposure to asbestos.  *Id.* at 597.  The district court had certified the class based on the "class members' shared experience of asbestos exposure and their common interest in receiving prompt and fair compensation."  *Id.* at 622 (cleaned up).

The Supreme Court held that these commonalities were not enough to certify the class because individual questions overwhelmed the shared ones.  The Court explained that "'mass accident'" cases are "'ordinarily not appropriate' for class treatment," because they often "present 'significant questions, not only of damages but of liability and defenses of liability, . . . affecting the individuals in different ways.'"  *Id.* at 625 (quoting Adv. Comm. Notes, 28 U.S.C.App., p. 697).  The proposed class suffered from these defects.  The Court listed "the disparate questions undermining class cohesion:" class members were exposed "in different ways, over different periods, and for different amounts of time" and suffered a range of diseases.  *Amchem*, 521 U.S. at 609, 625.  Given the high "individual stakes" and these "disparities among class members," the

10

Court found that individual issues predominated.  *Id.* at 625.

The same analysis is determinative here.  As in *Amchem*, the governing law demands individualized proof of injury, causation, and damages—which precludes class treatment.  As this Court recently explained, Puerto Rico law requires each class member to "establish . . . physical or emotional injury" and "a sufficient causal nexus between the injury and defendant's act or omission."  MTD Op. 11.

Plaintiffs' own allegations underscore just how individualized and variable those determinations would be in this case.  The putative class sweeps in every person who resided, worked, or attended school within a four-mile radius of three different facilities, over different time periods, beginning on each facility's date of initial emissions.  Am. Compl. ¶ 96.  Membership thus spans individuals with sharply divergent exposure durations and patterns—ranging from those who may have been present in the area briefly or intermittently to those who lived nearby for decades.  *See id.* ¶ 29.  It also encompasses people situated at varying distances and directions from each facility, who would thus be subject to different alleged exposure over time, particularly given that any emissions disperse "by the wind and natural air movement."  *Id.* ¶¶ 5, 35; *see also Com. of Puerto Rico v. M/V Emily S.*, 158 F.R.D. 9, 15 (D.P.R. 1994) (explaining that individualized issues predominated where "*each* plaintiff would have to separately establish what . . . pollution caused him damage depending on the wind [and] location of the factories") (quoting *Boring v. Medusa Portland Cement Co.*, 63 F.R.D. 78, 84 (1974)).  On Plaintiffs' own theory, any attempt to establish exposure level, dose, or risk would necessarily devolve into person-by-person assessments of where each putative member was, for how long, relative to which facility, and under what environmental conditions.

Compounding the problem, this Court has already explained that claims by former

11

residents who moved away from the relevant facility are time-barred. *See* MTD Op. 9 (dismissing Iris Rivera-Vargas's claims against Edwards LifeSciences as time-barred because she stopped working near the facility in 2008). Identifying and excising those individuals with time-barred claims from the class would require individualized inquiries into each putative class member's residential, school, and employment histories. The First Circuit has cautioned that "a necessity for individualized statute-of-limitations determinations invariably weighs against class certification under Rule 23(b)(3)." *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 296 (1st Cir. 2000). So too here.

The Complaint also reveals profound variability in the nature and extent of class members' claimed injuries. The Plaintiffs themselves posit a host of injuries, from multiple types of cancer to "other illnesses." Am. Compl. 3, ¶ 107. That heterogeneity defeats any effort to establish injury or causation with common proof. Determining whether any given individual actually suffered from a compensable injury and whether that injury can be attributed to EtO emissions from the nearby Moving Defendant's facility (versus other exposures) would turn on individualized medical evidence. Liability for any given individual also would require accounting for alternative risk factors unique to each person—such as family history, comorbidities, occupational and environmental exposures, and lifestyle choices—that may explain or contribute to the alleged medical conditions. Courts have long recognized that these patient-specific, disease-specific causation issues cannot be resolved across a group and instead necessitate trials for each claimant. *See M/V Emily S.*, 158 F.R.D. at 15 (explaining that "the characteristics of individual plaintiffs (e.g., state of health, lifestyle) and the nature of their exposure" are "highly individualistic") (quoting *In re Agent Orange Prod. Liability Litigation*, 818 F.2d 145, 165 (2d Cir. 1987)).

These individualized inquiries would overwhelm any economies of scale ordinarily associated with class litigation. *In re Puerto Rican Cabotage Antitrust Litig.*, 269 F.R.D. 125, 140 (D.P.R. 2010) (explaining that Rule 23 requires a court to consider, among other things, whether "the class action w[ould] achieve economies of time, effort, and expense") (quotations omitted). The action would splinter into innumerable mini-trials on these questions, eroding uniformity of decision and creating profound manageability problems that a class trial cannot realistically accommodate. Limitations defenses would only exacerbate this problem because the Court would need to assess when each individual's exposure ended and whether the one-year prescriptive period expired. *See* MTD Op. 9; *Waste Mgmt. Holdings, Inc.*, 208 F.3d at 296. By contrast, striking the class allegations now would avoid the substantial expense of class discovery, thereby conserving judicial and party resources and streamlining the path to resolution of the Plaintiffs' individual claims. *See M/V Emily S.*, 158 F.R.D. at 16 (explaining that "judicial resources would be more efficiently spent in managing [personal injury claims from] oil spill . . . on the basis of consolidated individual claims to ensure that the interests of all litigants are adequately presented").

The severity and heterogeneous nature of the asserted injuries further undercuts superiority because claimants who allege serious diseases have a legitimate interest in controlling their own actions and pursuing individualized relief calibrated to their specific medical circumstances. *See id.* (holding that a class action flunked superiority where "there [wa]s a significant reason for any claimant with a substantial claim to control the prosecution of his or her case"). Attempting to shoehorn these disparate claims into a single class is unnecessary and unwarranted and would promote neither efficiency nor fairness.

In sum, Plaintiffs must prove that they suffered an actual injury caused by EtO exposure and damages. MTD Op. 11; *Cintrón Adorno*, 147 D.P.R. at 589. It will be challenging for any

13

single litigant to prove these elements under Puerto Rico law. And yet Plaintiffs here would be trying to lump together tens of thousands of class members with various exposure histories, different risk factors, and injuries ranging from cancer to "other illnesses" merely on the basis that the class purportedly was exposed to EtO. Am. Compl. ¶ 96-97, 107. For example, Ms. Vargas-Gratacós alone alleges melanoma, asthma, high blood pressure and arthritis, *see id.* ¶ 85, underscoring the breadth of conditions Plaintiffs seek to aggregate. As in *Amchem*, this sprawling class would not "generate common answers apt to drive the resolution of this litigation," *Dukes*, 564 U.S. at 350 (cleaned up), and would not "achieve economies of time, effort, and expense," *In re Puerto Rican Cabotage Antitrust Litig.*, 269 F.R.D. at 140 (quotations omitted).

## III. THE STRUCTURAL MISMATCH BETWEEN PLAINTIFFS' PRESENT-PHYSICAL INJURY CLAIMS AND AN EXPOSURE-ONLY CLASS MEANS PLAINTIFFS FAIL BOTH ADEQUACY AND TYPICALITY UNDER RULE 23(A).

Plaintiffs' proposed class suffers from a third, independent flaw: Plaintiffs, who allege manifested physical injuries yet want to represent an exposure-only class, fail Rule 23(a)'s adequacy and typicality requirements.

### A. Plaintiffs' Claims Are Atypical Of The Class.

Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). This inquiry "focus[es] on whether the named representatives' claims have the same essential characteristics as the claims of the class at large." *Collazo v. Calderon*, 212 F.R.D. 437, 442 (D.P.R. 2002). Typicality does not exist where "factual differences predominate to the extent where the court must make highly fact-specific or individualized determinations in order to establish a defendant's liability to each class member." *Id.* at 443.

Plaintiffs cannot satisfy this standard. Typicality frequently thwarts class certification in personal-injury cases because injury, causation, and damages turn on individualized proof. *See,*

14

*e.g.*, *M/V Emily S.*, 158 F.R.D. at 14 (explaining that a class representative is atypical when "any injuries would be dependent upon the numerous variables present, including such matters as personal susceptibility to harm, and degree, nature, and duration of exposure").  For similar reasons, medical-monitoring classes are virtually never certified.  *See, e.g.*, *Ball v. Union Carbide Corp.*, 385 F.3d 713, 728 (6th Cir. 2004) (explaining that "by seeking medical monitoring . . . Plaintiffs have raised individualized issues" that preclude certification); *see also Mod. Holdings, LLC v. Corning, Inc.*, 2018 WL 1546355, at *9 (E.D. Ky. Mar. 29, 2018); *Barraza v. C. R. Bard Inc.*, 322 F.R.D. 369, 390 (D. Ariz. 2017).  And when they are initially certified, they are routinely reversed on appeal.  *See, e.g.*, *In re St. Jude Med., Inc.*, 425 F.3d 1116, 1121-23 (8th Cir. 2005) (reversing certification of class because "each plaintiff's need (or lack of need) for medical monitoring is highly individualized").

Here, the mismatch is even more pronounced.  Plaintiffs allege actual, manifested physical injuries, whereas the putative class is defined by mere alleged exposure to EtO.  The District Court ruled that the Plaintiffs each pleaded actual physical injury because each alleged that she suffered from at least one diagnosed disease purportedly caused by EtO exposure.  *See* MTD Op. 11 & n.8; *see also* Am. Compl. ¶¶ 77-86 (alleging various diseases from EtO exposure).  But the class definition would sweep in all individuals who may have been merely *exposed* to EtO emissions from Defendants' facilities regardless of whether they experienced any illness, symptoms, or medically cognizable harm and regardless of whether they actually develop any medical condition in the future.  *See* Am. Compl. ¶ 96.  As the Supreme Court explained in *Amchem*, where the class—much like the putative one—included both plaintiffs who had already manifested physical injuries and "exposure-only" claimants, "[t]he [exposure-only] plaintiffs . . . share little in common, either with each other or with the presently injured class members," even if exposure

itself could be an injury. *Id.* at 624. "It is unclear whether they will contract [ ] disease and, if so, what disease each will suffer. They will also incur different medical expenses because their monitoring and treatment will depend on singular circumstances and individual medical histories." *Id.*

Because Plaintiffs' claims turn on proof of individual injury, disease-specific causation, and related damages—issues not present for the exposure-only class they seek to represent—their claims do not share the "essential characteristics" of the claims of the class at large. *Collazo*, 212 F.R.D. at 442. That divergence defeats typicality under Rule 23(a)(3).

### B.    Plaintiffs Are Inadequate Class Representatives.

The differences between Plaintiffs and the class they seek to represent also make them inadequate class representatives. Courts may certify a class only if the representative parties "will fairly and adequately protect" the class's interests. Fed. R. Civ. P. 23(a)(4). To satisfy the adequacy requirement, "[t]he moving party must show . . . that the interests of the representative party will not conflict with the interests of any of the class members." *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130 (1st Cir. 1985). Such conflicts undermine the indispensable "structural assurance of fair and adequate representation for the diverse groups and individuals affected" by the class-action litigation or settlement. *Amchem*, 521 U.S. at 627. Along this vein, "it is well established that a class representative must be part of the class and 'possess the same interest and suffer the same injury as the class members.'" *In re Puerto Rican Cabotage Antitrust Litig.*, 269 F.R.D. at 132 (quoting *Amchem*, 521 U.S. at 625-26).

The proposed class here mirrors the inadequate class in *Amchem*, which included people who were allegedly injured by asbestos as well as people who had only been exposed to it. *Amchem*, 521 U.S. at 626. The Supreme Court explained that "the interests of those within the single class are not aligned." *Id.* "[F]or the currently injured, the critical goal is generous

16

immediate payments." *Id.* "That goal tugs against the interests of exposure-only plaintiffs in ensuring an ample, inflation-protected fund for the future." *Id.*

So too here. Plaintiffs—who allege present physical injury—have every incentive to pursue immediate, individualized recoveries tied to disease-specific causation and substantial compensatory damages for their alleged ailments. By contrast, even assuming for the sake of argument that exposure-only putative class members could have a claim under Puerto Rico law, *but see supra* at 8-9, the fact remains that many may never become ill with any disease they might try to connect to EtO exposure. These uninjured class members would rationally prioritize forward-looking relief and the preservation of resources for potential future claims. These divergent objectives create concrete tensions in litigation strategy, proof, and any settlement allocation: what benefits the currently injured diminishes resources available to exposure-only individuals. As in *Amchem*, these misaligned interests defeat the "structural assurance of fair and adequate representation" required by Rule 23(a)(4). *Amchem*, 521 U.S. at 627.

Binding exposure-only individuals to a merits judgment now would also be inequitable to the class members. Under existing Puerto Rico law, exposure-only members who have suffered no actual physical injury face no limitations pressure to sue today. *See Cintrón Adorno*, 147 D.P.R. at 589. The statute of limitations on their claims may not be running; indeed, they have no claim to pursue under Puerto Rico law unless and until an injury manifests, if it does. *See* MTD Op. 11. Plaintiffs' contrary arguments—that exposure-only class members have a cognizable injury and ripe claims, just like Plaintiffs—is not only incorrect as a matter of Puerto Rico law; it would also thrust those individuals into immediate litigation they may not want and cannot win. *See id.*; *Cintrón Adorno*, 147 D.P.R. at 589. Plaintiffs, after all, suffered their injuries long ago and their limitations clock may have already run out. *See* MTD Op. 8. They are inadequate representatives

17

of those who *can* wait.  What is more, once a Court has certified a class, any judgment entered in the action binds all members of the class.  *See, e.g.*, *Hansberry v. Lee*, 311 U.S. 32, 40-41 (1940).  This class, if certified, would therefore bind exposure-only individuals—win or lose—to a judgment with respect to claims that have not even ripened, and that they may not want to bring.  This, too, defeats adequacy.

* * *

Plaintiffs also purport to seek certification under Rule 23(b)(2).  *See* Am. Compl. ¶ 96.  But their own pleading makes clear that they "seek injury compensation as well as medical monitoring costs," *see* Am. Compl. at 2—*i.e.*, money damages—not merely indivisible injunctive relief.  Rule 23(b)(2) "does not authorize class certification when each class member would be entitled to an individualized award of monetary damages."  *Dukes*, 564 U.S. at 360-61; *see also Paternostro v. Choice Hotel Int'l Servs. Corp.*, 309 F.R.D. 397, 403 (E.D. La. 2015) (holding, where plaintiffs sought medical monitoring, that "the relief sought here is primarily monetary," such that Rule 23(b)(2) certification is inappropriate).  At any rate, even if Plaintiffs' request were analyzed under Rule 23(b)(2), certification would fail for the same reasons certification of the Rule 23(b)(3) class fails.  *First*, a Rule 23(b)(2) class cannot consist of members without an injury.  *See supra* at 8-9; MTD Op. 11; *Cintrón Adorno,* 147 D.P.R. at 589; *Kohen*, 571 F.3d at 677.  *Second*, a Rule 23(b)(2) class cannot be represented by inadequate or atypical class representatives.  *See* Fed. R. Civ. P. 23(a); *see also supra* at 14-18.  *Finally*, although Rule 23(b)(2) does not require predominance and superiority, it demands class-wide cohesion—a more exacting standard than predominance.  *See Reid v. Donelan*, 17 F.4th 1, 11 (1st Cir. 2021) (citing 1 McLaughlin on Class Actions: Law & Practice § 5:15 (17th ed. 2020) (collecting cases)).  As with predominance, a class consisting of personal injury claimants cannot satisfy cohesion because individualized questions of injury,

18

causation, and damages do not "apply generally to the class." Fed. R. Civ. P. 23(b)(2); *see supra* at 9-14; *Amchem*, 521 U.S. at 624-25. And, more so, a mixed class including plaintiffs with manifested injury and exposure-only plaintiffs lacks cohesion to an even greater degree.

**CONCLUSION**

For these reasons, the Court should strike Plaintiffs' class allegations now, which will make this case markedly more manageable and less expensive by avoiding wasteful class discovery.

19

**RESPECTFULLY SUBMITTED**.

In San Juan, Puerto Rico, this 17th day of December, 2025.

      **WE HEREBY CERTIFY** that on this same date a true and exact copy of this motion was filed with the Clerk of Court using the CM/ECF system, which will notify a copy to counsel of record.

 

 

_____

A.M. Cristina Pérez-Soto (USDC-PR No. 218604)
Sharyl A. Reisman (*pro hac vice*)
**JONES DAY**
250 Vesey St.
New York, NY 10281
Tel: (212) 326-3939
Fax: (212) 755-7306
cperezsoto@JonesDay.com
sareisman@JonesDay.com

*/s/Leslie Y. Flores-Rodriguez*
Leslie Y. Flores-Rodriguez (USDC-PR No. 223601)
Carlos J. Fernández-Lugo (USDC-PR No. 210305)
**McCONNELL VALDÉS LLC**
270 Muñoz Rivera Avenue
Hato Rey, Puerto Rico 00918
Tel: (787) 759-5628
Fax: (787) 759-8282
lfr@mcvpr.com
cfl@mcvpr.com

*Counsel for Medtronic PR, Inc.*

20

Lee R. Sepulvado Ramos (USDC-PR Bar No. 211912)
Albéniz Couret Fuentes (USDC-PR Bar No. 222207)
**SEPULVADO, MALDONADO & COURET**
304 Ave. Ponce de León
Suite 990
San Juan, PR 00918
Tel: (787) 765-5656
Fax: (787) 294-0073
lsepulvado@smclawpr.com
acouret@smclawpr.com

*Counsel for Customed, Inc.*

Roberto A. Cámara-Fuertes (USDC-PR Bar No. 219002)
Jaime A. Torrens-Dávila (USDC-PR No. 223810)
Pedro I. Torres-Crespí (USDC-PR 309111)
**FERRAIUOLI LLC**
P.O. Box 195168
San Juan, PR 00919-5168
Tel: (787) 766-7000
Fax: (787) 766-7001
rcamara@ferraiuoli.com
jtorrens@ferraiuoli.com
ptorres@ferraiuoli.com

*Counsel for Steri-Tech, Inc.*

21